VAN KLEECK, *appellant,* and the MINISTER, ELDERS AND DEACONS OF THE REFORMED PROTESTANT DUTCH CHURCH OF THE CITY OF NEW-YORK, and others, *respondents.*

Property specifically devised does not go into the *residuum* where the devisee is *by law incapable* of taking ; in such case, as well as where a devise *lapses* by the death of the devisee, the property descends to the *heir at law :* and IT WAS ACCORDINGLY HELD, where by a will made in 1722, real estate was devised to a *religious corporation,* and the will contained a devise to *residuary devisees,* that though the devise to the corporation was void *ab initio* for the purpose of passing the estate, still it was operative as indicating the intent of the testator, and that the devise to the corporation showing the intention of the testator *not* to give the property to the *residuary devisees,* it did not pass to them, but descended to the *heir at law.*

At the common law, a *residuary devisee* of *real estate* takes only what was *intended for him* at the time of the making of the will; not so as to a *residuary legatee* of personal estate. The latter takes not only what was *undisposed of by the will,* but also that *which becomes undisposed of* at the death of the testator by the *disappointment of his intention.* Whether the above distinction in reference to *real* and *personal* property is not abolished by the revised statutes, 2 *R. S.* 57, §5, *quere ?*

Where there is an absolute devise to a corporation, which by law is incapable o taking, nothing can be claimed by reason of such devise by a *residuary devisee* on the ground of a contingent interest given by the residuary clause, based upon the possibility of a reversion of the estate by the dissolution of the corporation, or by a forfeiture of its rights, in consequence of the non-performance of conditions.

To entitle a party to claim a *discovery*, he must show a perfect *prima facie* title in himself, before he can call upon the party in possession to disclose his title.

Where a testator devises all his interest in a *specific tract of land*, and then sets forth that partition had been made of the tract and certain lots assigned to him: *all which lots* he devises, &c—whether, in construing the devise, the *first* or *second* description shall control, *quere ?*

APPEAL from chancery. The appellant filed a bill of discovery relative to certain property in the city of New-York, in the possession of the Reformed Protestant Dutch Church of that city, and praying an account, &c.; he alleged that the church was an *incorporated body*, and was in possession of the property in question, under a devise contained in the will of *John Harberdinck,* bearing date 23d April, 1722 ; which devise he averred to be *void,* on account of the incapacity of the church to take real estate by devise ; and that by a *residuary clause* in the will, the property in question was given to four persons or the children of those persons, one of whom was the ancestor of the appellant, and under whom he derived title to two-fifths of the share devised to him. The appellant set forth the will, by which the testator, after declaring his intention to dispose of his temporal estate, and giving certain specific legacies to remote relatives of his own residing in Holland. and a small sum to the son of a kinsman residing in the city of New-York, devised unto the Minister, Elders and Deacons of the Reformed Protestant Dutch Church of the city of New-York, and to their successors, forever, " all that my (*testator's*) *right, title,* interest and property in and to an equal fifth part, share and proportion of all that tract or parcel of land, situate lying and being upon Manhattan's Island, within the city of New-York, called or known by the name of *Shoemaker's field* or land, on the northeast side of Maiden's Lane or path, which leads unto a certain street called Queen-street ; the which said tract or parcel of land contains by estimation about sixteen acres, and by mutual consent, agree-

ment and approbation of all the proprietors and part owners
therein concerned, some years past was surveyed and laid out
into 164 lots, with convenient streets and lanes to accommodate
the same, as may fully and amply appear by a certain instru-
ment of indenture, with the map or chart thereunto annexed,
under the hands and seals of all the proprietors and part owners,
viz. (naming five persons, including the testator,) as by the said
indenture with the chart or map bearing date 14th September,
1696, relation being thereunto had more fully and at large doth
and may appear.   By which indenture, with the chart or map
thereunto annexed, it is declared and agreed, that the said John
Harberdinck's *proprietie,* share and dividend in the said 164
general lots, which be and consist in five and thirty lots, des-
cribed, *markt* and numbered, viz. one, &c. (enumerating the lots
assigned to him) lying and being, butted bounded and containing
in length and breadth *as* by the said indenture with the map or
chart amply and largely is described, mentioned and expressed ;
together with four other lots, &c. (describing them) *all which seve-*
*ral and respective lots, pieces and parcels of land,* I, the said testa-
tor, do hereby give, devise and bequeath unto the said Minister,
Elders and Deacons of the Reformed Protestant Dutch Church of
the city of New-York, and to their lawful successors forever.   To
HAVE AND TO HOLD, all the aforesaid several and respective
lots, pieces and parcels of land unto the said Minister, &c.
and their lawful successors forever, to be received and
employed by the said Minister, &c. *immediately after my*
*decease, and the decease of my wife, Mayken Harberdinck,*
for the payment of the yearly stipend, salary or main-
tenance of the respective minister or ministers which from
time to time and at all times hereafter, shall be duly and legally
called to the *ministrie* of the said church, and to no other use
or uses whatsoever."   Then came the following clause : " And
I, the said John Harberdinck, do further give, devise and bequeath.
unto my said wife, Mayken Harberdinck, *all the rest* of my tem-
poral estate, real and personal, none excepted, whether the same
shall be and consist in houses, lands, goods, chattels, gold, silver,
moneys, negroes, bonds, mortgages, bills, book debts, or any

other effects or estate whatsoever, none in the world excepted. To Have and to Hold *all the rest* and remaining part of my estate, *except what part as above is bequeathed and disposed,* unto my said wife, Mayken Harberdinck, during her natural life ; and after her decease, I give, devise and bequeath one just and equal quarter part *thereof* unto my wife's sister, Jannatie Boss, to be equally divided between her children ; one other just and equal quarter thereof I give, devise and bequeath unto all the children of *Baltis Van Kleeck,* late of Dutchess county, deceased, to be equally divided between them, and to their heirs and assigns, forever." The two other quarters of the estate were disposed of in like manner to other persons. The testator died previous to 7th February, 1723. The appellant deduced title to the premises in question under the devise to the children of *Baltis Van Kleeck.*

The appellant further stated in his bill that the testator, notwithstanding the *partition* set forth in his will, *continued seized in fee simple,* as tenant in common with the four other persons, between whom and himself partition had been made as stated in his will, in and to an undivided fifth part of a *certain piece of land left undivided* by the proprietors of the Shoemaker's field, lying between the streets now called Nassau and William, and Fulton and John, being about 200 feet in length, and about 100 in width, and *designated* on the map or chart annexed to the indenture of partition (referred to in the will) *as not divided* among the proprietors of the tract called *Shoemaker's field.*

He further stated, that the Reformed Protestant Dutch Church were *incorporated* by letters patent under the great seal of the colony of New-York, on the 11th May, 1696, whereby a church then erected and certain real estate were granted and confirmed unto the corporation, who were further authorized to purchase and hold other lands, over and above those thereby settled on the corporation, *not exceeding the yearly value of* £200, current money of the province. The appellant averred that the *yearly value* of the lots in the *Shoemaker's field,* claimed and possessed by the corporation under *John Harberdinck,* greatly exceeded

Van Kleeck *v.* Dutch Church of New-York.

£200, at the time of the death of the testator, and at the time when the corporation took possession of the property and entered into the receipt of the rents, issues and profits thereof; and although the capacity of the corporation to take and hold real estate had from time to time been enlarged by statutes passed for that purpose; yet the appellant charged that the yearly value of the lands holden under the will of Harberdinck has in each year greatly exceeded the amount which the corporation were by law authorized to take and hold, specifying the amounts received between certain periods, and that at the filing of the bill they were of the yearly value of $30,000.

The appellant averred that in two ejectment suits commenced by him as the heir at law of one of the children of Baltis Van Kleeck, for the recovery of a part of the premises possessed by the corporation, he had been nonsuited for the want of sufficient proof; the officers of the corporation refusing to be sworn or to furnish him with the evidence in their possession necessary to the maintenance of the suits. He then prayed for a discovery, an account, and for general relief.

The respondents put in a *demurrer* to the bill, which, after argument, was allowed by the chancellor, and the bill dismissed with costs. *See the opinion delivered by the chancellor,* 6 *Paige's Ch. R.* 606 *et seq.* Whereupon the case was removed into this court by appeal. The cause was argued here by

*L. H. Palmer & B. F. Butler,* for the appellant.

*D. Lord, jun. & G. Wood,* for the respondents.

*Points on the part of the appellant :*

I. The attempted devise to the church was wholly illegal; the *act* and *intention* were both absolutely void *ab initio,* and as the land described in this void devise was not *effectually* disposed of, it constituted a part of the *residuum* of the estate, and passed to the residuary devisees. *Doe, ex dem. Ferguson,* v. *Roe,* 1 *Harrington,* 256, 258. *Denn* v. *Taylor,* 2 *Chit.* 681. 18 *Com. Law R.* 457. *Doe* v. *Sheffield,* 13 *East.* *Goodwright*

*v. The Marquis of Devonshire,* 2 *Bos. & Pul.* 600. *Lydott* v. *Willows,* 3 *Mod.* 229. *Countess of Bridgewater* v. *Duke of Bolton,* 6 *id.* 111. *Bennett* v. *French, Leon.* 551. 8 *Vin. Abr.* 47, *No.* 9. *Id.* 368, *U. c. Id.* 371, *W. c. Id.* 444, *No.* 1, *C. c.* 14 *id. tit. Intent,* 450. 7 *Johns. Ch. R.* 264 to 273. *Doe* v. *Pedley,* 1 *Mees & Wels.* 670. *Stevens* v. *Hide, Cas. Temp. Talb.* 29. *Sherwood and Noon's case,* 1 *Leon,* 250. *Crane* v. *Crane,* 2 *Root,* 487. *Brown* v. *Higgs,* 4 *Ves.* 716. *Munday* v. *Munday, Cas. Temp. Hard.* 143. *Dunage* v. *White, Jac. & Walk. Tregonville* v. *Tregonville,* 3 *Dow's Parl. R.* 206. *Cruise* v. *Barley,* 3 *P. Wms.* 20. *Morgan* v. *Surman,* 1 *Taunton,* 289. 3 *Maule & Selw.* 300. 14 *East,* 372. 6 *Dow's Parl. R.* 35. 1 *Harrington,* 256. *Hayden* v. *Stouten,* 5 *Pick.* 528. *Brigham* v. *Shattuck,* 10 *id.* 309. *Mayor* v. *Gowland, Dickins* 563. *Goodtitle* v. *Knot,* 5 *Moore & Payne,* 682. *Cowp.* 44. *Hall* v. *Mullen,* 5 *Har. & John.* 194. *Doe* v. *Bartle,* 1 *Dowl. & Ryl.* 81. *Jones* v. *Mitchell,* 2 *Sim. & Stu.* 293. *Theall* v. *Theall,* 7 *Lou. R.* 230. *Lessee of Cheeseman* v. *West,* 1 *Yeates,* 413. *Lillibridge* v. *Adie,* 1 *Mason,* 234. *Sloan* v. *Hayle, Rawle,* 28. *Crooke* v. *De Vandes,* 9 *Ves.* 205. *Greene* v. *Stevens,* 17 *id.* 76. 2 *Bulstrode,* 180. *Bacon* v. *Hall, Cro. Eliz.* 497. *Id.* 422. *Doe* v. *Weatherby,* 11 *East. Doe* v. *Langdon,* 14 *id. Code Napoleon, b.* 3, *p.* 275, *tit.* 11, *Donations by Wills,* § 3; *Heirs and Legacies, No.* 1002, § 4; *General Legacy, No.* 1003, 1004, 1005, 1006, 1009, 1011, 1012. *Digest Civil Law in New-Orleans, ch.* 6, § 3, 232; *art.* 110, § 4, 234; *art.* 120, 121. *Doe* v. *Underdown, Willes,* 276. *Perkins,* 566. *Wright* v. *Horne,* 8 *Mod.* 223. *Roe* v. *Flood, Fortes,* 184. *Goodwright* v. *Opie,* 8 *Mod.* 123. *Crooke* v. *De Vandes, Willes,* 305. 11 *Ves.* 332. *Cole* v. *Clairbourne,* 1 *Wash.* 285. *Peay* v. *Barbour,* 1 *Hill's S. C. R.* 97. *Hyle* v. *Hyle,* 3 *Mod.* 228. *Goodwright* v. *Wright,* 12 *id.* 287. *Goore* v. *Goore,* 9 *id. Cov. & Hughes' Dig.* 512. *Wiseman* v. *Baldwin, Owen,* 112. *Perkins,* 566. *Brownl. & Goldsb.* 246, *Fleming J. Bulstrode,* 292. *Hutton* v. *Simpson,* 2 *Ves.* 722. *Doe* v. *Kit,* 4 *T. R.* 603. *Warner* v. *White, Doug.* 339. *Hogson* v. *Ambrose, id.* 341.

*White* v. *White,* cited 6 *T. R.* 518. *Cro. Eliz.* 422, *pt.* 20. *Ward's case,* per *Dyer J. Plowden,* 414. *Cambridge* v. *Rouse,* 8 *Ves.* 25. *Roe* v. *Wickett, Willes,* 305. *Maxwill* v. *Call,* 1 *Bro. C. C. R.* 889.

1. By the common law, as settled by the English decisions at the American revolution, the residuary legatee takes in preference to the next of kin, all legacies and bequests which become lapsed by events subsequent to the making of the will as well as those which were originally *void.*

2. In residuary devises of *land,* or of moneys regarded as land, whether to a party for his own benefit, or as trustee, the common law, as settled at the revolution, gave the estate or money to the *heir* in all cases of lapsed devises, or lapsed charges on the fund.

3. This preference of the heir to the *residuary legatee,* in all cases of land, and of uses springing out of land, was founded, not in reason, but on the policy of the feudal system, and of the English constitution, and is not applicable here ; though being firmly settled in England, as a part of the common law, it must be received and acted on with us until altered by the legislature.

4. There is a distinction between a devise void, *ab initio,* and one that becomes void by the subsequent death of the devisee, or by any other subsequent event. In the former case, the land attempted to be devised, sinks into the *residium,* and goes to the residuary devisees ; in the latter, it goes to the heir at law. This distinction was taken in *Bennett* v. *French,* decided prior to 1589 ; was several times recognized between that time and the revolution, and has never been denied or questioned in any English case ; on the contrary, the weight of English authority, both before and since the revolution, is decidedly in its favor.

5. It is not inconsistent with this distinction, that where lands are devised to the heir himself, charged with the payment of legacies and debts, a *void* as well a *lapsed* legacy should fall into the estate for the benefit of the *heir :* nor that a similar result should take place where lands are devised to trustees, and directed to be sold for the payment of legacies and debts, and one of the

legacies is either void or lapsed. *Jackson* v. *Harlock, Ambler,* 487. *Collins* v. *Wakeman,* 2 *Ves. jun.* 683. *Rashley* v. *Masters,* 1 *Ves.* 201, 202. *Grovner* v. *Hallum,* 2 *Blunt's Ambler,* 643. *Arnold* v. *Chapman,* 1 *Ves. sen. Kennel* v. *Abbot,* 1 *Sim. & Stuart,* 296. 4 *Ves.* 802.

6. Nor is it inconsistent with this distinction that the heir, and not the residuary devisee should take where there is a devise to the heir, of land to which he is entitled by descent. *Hutchinson* v. *Hammon, per Buller, J.* 3 *Bro. C. C.* 143. *Kennon* v. *Mc Roberts,* 1 *Wash.* 109, *in connection with Cole* v. *Clayborne, id.* 265. *Smith* v. *Saunders, W. Black.* 736. *Newkerk* v. *Newkerk,* 2 *Caines,* 345. *Cowp.* 420. 8 *Petersdorf,* 132. *Robinson* v. *Knight,* 2 *Eden,* 155. *Ellis v. Smith* 1 *Ves.* 17. *Jackson* v. *Harlock, Ambler,* 487.

7. The distinction above stated is founded in good sense. Where the devise is void, it is not to be regarded as any part of the will, but the will should be construed, as if the void devise were stricken out. In such case, the land described in it, will of course sink into the general bulk of the estate, and go to the residuary devisee if there be one.

8. The two American cases cited by the chancellor, in which it has been held, that a devise void *ab initio* did not fall into the residuum, but descended, as in the case of a lapsed devise to the heir at law, were decided without reference to the above-mentioned distinction ; are not binding on the courts of this state, and especially on this court; and are moreover contrary to the English decisions, and to other American cases of higher authority.

9. If no authoritative decision on this point has been made by the courts of this state, we must take the English adjudged cases as evidence of the common law. Those cases, as above stated, are in favor of the distinction referred to, which should the more readily be adopted by the American courts, as there is here no good reason for extending any peculiar immunity to the heirs at law. *Jackson* v. *Harlock, Ambl.* 487. *Grosvenor* v. *Hallam, id.* 643. *Newell* v. *Newell,* 12 *Price,* 300. *Slade* v. *Slade.*

Van Kleeck *v*. Dutch Church of New-York.

2 *Vern.* 624.   *Bert* v. *Rigdon*, 1 *Plowd.* 340.   1 *P. Wms.* 307.
1 *Stange*, 25.

II. Notwithstanding the testator's attempt to devise the land to the church, and admitting that he actually intended that the residuary devisees should take nothing which he had attempted to give the church, there yet remained in legal contemplation a residuary and contingent interest, founded on the condition annexed by law to every devise of this sort, that the land may revert by the dissolution of the corporation, or by breach of the condition on which the devise is made.   This reversionary and contingent interest was a proper subject of devise, consistently with the declared intent of the testator ; and even had the devise been valid, would have gone to the residuary devisees.   The descent to the heir was thus broken ; and the actual devise of the reversionary and contingent interest to the residuary devisees, drew along with it (the devise to the church being void) the whole estate, according to the well settled distinction in the English cases , which is recognised and assented to by his honor the chancellor, in his opinion in this case. 2 *Black. Comm.* 175. *Angel on Corp.* 105, § 2.   *Co. Litt.* 13, *b.* 1 *Black. Comm.* 484.   2 *id.* 256.   *Trustees of Dartmouth College* v. *Woodward,* 4 *Wheaton,* 518.   *Case of Sutton's Hospital*, 10 *Coke*, 24, 33. *Alleyn*, 28.   1 *Freeman,* 519.   2 *Cowp.* 808.   2 *Bos. & Pull.* 600.   1 *H. Black.* 30. 3 *T. R.* 88.   *Right of Visitation*, 1 *Wash.* 262.   *Phelps* v. *Berry*, *per Ld. Holt*, *Skinner*, 447, 483, 484.   *Eden* v. *Foster*, 2 *P. Wms.* 325, 426.   15 *Pick.* 538. 10 *id.* 309.   *Willes*, 296.   1 *Ves.* 420. 3 *Maule & Sel.* 300. *Fortes.* 84. *Salkeld*, 229.   11 *Mod.* 61.   2 *Vernon*, 394.   1 *H. Black.* 30.   *Co. Litt.* 215, *a.* 251, *a, b. Litt.* § 415.   *Black. Comm.* 158.   *Doe.* v. *Scott*, 3 *Maule & Sel.* 306.   *Willes*, 296, 300.   *Avelyn* v. *Ward*, 1 *Vesey*, 420.   *Sprig* v. *Sprig*, 2 *Vernon* 394.   6 *Halst. R.* 224.   *Paige* v. *Haywood*, 11 *Mod.* 61.

III. The situation of the testator's family ; the intention to dispose of all his property, expressed in the preamble and conclusion of his will ; and the singularly by comprehensive words of the residuary devise, leave no doubt that he actually and fully intended that all his property, not otherwise *effectually* disposed

of, should go, whether known to him or not, to his residuary devisees. They, and not his heir at law, were the special objects of his bounty. Even admitting that this case stands on the same ground as a *lapsed* devise, still there is a plain intent that the heir at law shall not take, which even in the case of a lapsed devise is sufficient to carry the estate to the residuary devisee. *Wilse* v. *Wilse,* 5 *Moore & Payne, Beachcraft* v. *Beachcraft,* 2 *Vern.* 690. *Munday* v. *Munday, Cas. Temp. Hardw.* 143. *Morgan* v. *Suerman,* 1 *Taunt.* 289. *Frogmorton* v. *Halliday* 1 *Wm. Black. Putnam* v. *Stevens,* 15 *East,* 505. *Kennon* v. *McRoberts,* 1 *Wash.* 107, 108, 109 ; *Rule, p.* 104, 105. *Smith* v. *Sanders,* 2 *Wm. Black. R.* 736. *Smith* v. *Triggs,* 1 *Stra.* 487. 2 *Vern.* 690. *Cole* v. *Clarebourn,* 1 *Wash. Strong* v. *Treat,* 1 *Wm. Black. R.* 200. *Robison* v. *Knight,* 2 *Eden,* 155. *Doe* v. *Alpen,* 4 *T. R.* 87. 6 *Mod.* 111. 10 *id.* 371. 3 *id.* 229. 2 *Vern.* 690. 5 *Harr. & Johns.* 190. *Sherwood & Nones' case,* 1 *Leon.* 250. 2 *Root,* 487. *Brown v. Higgs,* 4 *Ves.* 716.

IV. Supposing the residuary devisees not entitled to the land attempted to be devised to the church, yet the demurrer should have been overruled.

1. The church is in the possession of an undivided share in Shoemaker's field, claiming it under the will of the testator, which is not contained in the attempted devise to it, but which was intentionally and expressly devised to the residuary devisees.

2. The complainant, as a representative of the residuary devisees is entitled to the inspection and use of the will for the purpose of having it proved and established, especially as against a volunteer who has the will in his possession.

3. The complainant was entitled to the discovery prayed for, to enable him to prosecute his suit at law against the church. *Suffolk* v. *Green,* 1 *Atk.* 451. *Bishop of Sodor and Man* v. *Earl of Derby,* 2 *Ves.* 357. *Attorney Gen.* v. *Brown,* 1 *Swanst.* 304, *n. b.* 1 *Har. Ch. Pr.* 294. 2 *Madd. Ch.* 283.

*Points on the part of the respondents :*

I. Supposing the devise to the church to be void, the residuary devisees cannot take the land so devised ; because,

Van Kleeck *v.* Dutch Church of New-York.

1. In devises of real property, the intent is to pass nothing by the residuary clause, which the antecedent clauses of the will purport to grant to others. A devise of land operates upon and refers only to real estate *then* belonging to the devisor; and all devises of land, as well residuary devises as others, are specific. In both these respects a residuary devise of land differs from a residuary bequest of personalty. *Howe* v. *Earl of Dartmouth*, 7 *Vesey, jun.* 147. *Smith* v. *Saunders*, 2 *W. Black.* 736; *Cowper*, 420, *S. C. Grosvenor* v. *Hallam*, 2 *Ambler*, 645, *Blunt's ed.* 4 *Mass. R.* 154. 2 *Powell on Devises, ch.* 5, *Jarman's ed.*

2. As well in the case of an antecedent devise, which is inoperative by reason either of the illegality of the devise or of the previous death of the devisee, as in the case of an antecedent devise which lapses, the will purports to give to the devisee the subject devised. The intent of the testator is to exclude all such devises from the operation of the residuary clause.

3. The intent thus to exclude from the residuary clause is as strong in the case of an *illegal devise* as of a *lapsed devise ;* the latter is as inoperative as the former, inasmuch as the will is ambulatory and entirely inoperative until the death of the testator. Therefore, the decisions in favor of excluding from the operation of the residuary devise, lands embraced in antecedent devises in case of lapse are equally authorities to exclude lands embraced in devises *de facto* which are illegal. Cases of lapsed devises : *Doe* v. *Underdown, Willes*, 293. *Amesbury* v. *Brown*, cited by *Grey, Chief Justice, in* 2 *Black. R.* 739. *Wright* v. *Horne*, (also cited as *Wright* v. *Hall*,) 8 *Mod.* 122 ; *Fortes* 182, *S. C.; Willes*, 299 *S. C. Roe* v. *Flood*, 1 *Fortes.* 182. *Aveylyn* v. *Ward*, 1 *Vesey, sen.* 420. *Smith* v. *Saunders*, 2 *W. Black.* 736.

4. In the case of illegal devises the intent of the testator failing, and it being inadmissable to conjecture what would have been his disposition of the devised land had he known of the failure, it descends to the heir at law, who is not to be disinherited, unless by plain words or clear implication. *Denn* v. *Gaskin*,

*Cowper,* 266. *Prec. in Ch.* 473. *Tregonell* v. *Sydenham,* 3 *Dow,* 210. *Schauber* v. *Jackson,* 7 *Cowen,* 187 ; 2 *Wendell,* 13 *S. C. in error.* *Grosvenor* v. *Hallam,* 2 *Ambler,* 645, *Blunt's ed.* 2 *W. Black.* 736.

5. Although an illegal devise of particular lands shows an intent to exclude the *heir,* it also shows an intent to exclude the *residuary devisee* from taking it. The intent failing, the heir takes, not simply by force of the intent, but by the rule of law. *Cases as last cited.*

6. The weight of authority is in favor of excluding all cases of inoperative antecedent devises from the residuary clause. 1. Cases of lapsed devises, *supra.* 2. Cases of void devises: *Amesbury* v. *Brown,* cited in 2 *W. Black.* 737. *Goodright* v. *Opie,* 8 *Mod.* 123. *Willes,* 299. *Collins* v. *Wakeman,* 2 *Vesey, jun.* 683. 3. Cases of conditional devises : *Newkerk* v. *Newkerk,* 2 *Caines,* 345. *Roe* v. *Flood,* 1 *Fortes.* 184. *Doe* v. *Scott, 2 Maule & Selw.* 300. *Hayden* v. *Stoughton,* 5 *Pick.* 530. 4. Cases in which the heir takes illegal charges for charities : *Arnold* v. *Chapman,* 1 *Vesey, sen.* 108. *Grosvenor* v. *Hallam,* 2 *Ambler,* 645. *Durour* v. *Matteux,* 1 *Vesey, sen.* 321; 1 *Sim. & Stu.* 292, *S. C. Jones* v. *Mitchell, id.* 290. 5. Cases of illegal devises : *Tregonwell* v. *Sydenham,* 3 *Dow.* 200. *Green* v. *Dennis,* 6 *Conn. R.* 293. *Lingan* v. *Carroll,* 3 *Har. & McHen.* 333. *James* v. *James,* 4 *Paige,* 115. *See also* 2 *Powell on Devises,* ch. 3 and 5, *Jarman's ed.* cited in *Law Lib.* vol. 5, *N. S.*

7. In the present will, the peculiar language of the residuary clause shows an express intent to exclude from it all the real estate which the will antecedently purports to devise, whether legally and effectually devised or not.

II. Supposing the devise to the church to be valid, the residuary devisee cannot take ; because,

1. There is no actual or valid condition attached to the devise, *Newkerk* v. *Newkerk,* 2 *Caines,* 345 ; *Co. Litt.* 223 ; *Bradley* v. *Prixetto,* 3 *Vesey, jun,* 324 ; and if there were, none but the heir could take advantage of it.

2. If there be a condition, it cannot operate so as to create a legal and valid conditional limitation of the lands in question, to the residuary devisees.

After advisement, the following opinions were delivered:

By Chief Justice NELSON. It is admitted, for the purposes of this decision, that the devise to the church is void; that body being incapable, as the law stood at the time, of taking or holding real property by devise. And this presents the most material question involved in the case, viz : whether the premises thus ineffectually disposed of to the church passed to the *residuary devisees*, under the clause of the will in their favor, or descended to the heirs at law.

The intent of the testator is always the leading enquiry, when searching after the meaning of the whole or of any particular clause of his will; and no person can claim any interest or estate under it, unless he can, from the language employed, raise an intent, express or implied, to give him such interest. The *heir* takes independently of the will—the *devisee* only by virtue of its provisions. It is a fundamental rule, also, that an heir at law shall not be disinherited, unless there are express words or a strong implication to that effect; because, as is said, the title of the heir is founded on the laws of descent, which are certain, and is therefore not to be defeated by an uncertain devise. And further: if the estate is not effectually given to some other person or body, the heir takes it, because, however strong the language of the will and intent of the testator may be to cut him off, it is not enough; there must be an operative gift of the estate away from him. These are familiar general rules in respect to the construction of wills which have a bearing upon the particular question before us; but there are one or two others which I will advert to, relating directly to the interpretation of the *residuary clause.*

The effect of the residuary clause has frequently come under the consideration of the courts in respect to contingent and remote reversionary interests existing in the devisor at the date of his will,

which he had not previously disposed of by any words, and which therefore remained fit subject matter for the sweeping residuary provision to act upon. The question has usually arisen between the *heir* and the *residuary devisee*, the former insisting that the interest claimed was not included in that clause. The leading case is *Strong* v. *Fealt*, 2 *Burr*, 910, in which the court lay down the rule, that the generality of the expression used in the residuary clause, if unrestrained and unqualified by other words, would carry all the testator's estate in possession, reversion or remainder, but that these general words may be restrained by others, either expressly, or as clearly and plainly to be collected from the will; or, as perhaps better expressed by Lord Tenterden, Ch. J. in *Doe* v. *Fosseck*, 1 *Barn. & Adol.* 186, where he says: "I take the general rule of construction to be that all the testator has, which is not otherwise disposed of, passes under a residuary clause, unless there appear from other parts of the will when the whole is read, a clear and manifest intention that something should not pass." He further observes, "that it is not necessary that the testator should have a particular property or interest *in his contemplation* when framing the residuary clause; the question is, what intention appears on the whole, and the property will pass, unless it can be shown that the testator distinctly intended otherwise." This brings us directly to the application of these rules to the will under consideration.

It must be admitted that the residuary clause, copious as is the language of conveyancing, could not very well be made more comprehensive; and of course operates upon every interest or estate that the testator had at the time, and from which it is not restrained by his manifest intent, as indicated by other portions of his will. For the *respondents* it is insisted such intent, in respect to the premises in question, is indicated by the previous disposition to the church—that that act of the mind is irreconcileable with the idea of an intent at the same time to give the premises to the residuary devisees—that the first is plainly expressed, the devise being in terms to the church, and that the

court therefore cannot by construction raise another for the benefit of the residuary devisees contradictory to it.   I was strongly impressed with the force of this view on the argument, and did not then and do not now perceive how it can successfully be met, unless it is by calling in aid some principle of law that will justify us in obliterating from the will this devise, so that it may be disregarded in searching for the intent of the testator; then scope would be given to the general words to operate, and carry the estate over to the residuary devisees.   It is admitted for all purposes of *passing* the property to the church, this clause is as ineffectual as if it was out of the will, and has thus failed to further the object for which it was inserted: so far confessedly it is mere blank paper.   But is there any principle that will authorize us to *reject* the words when searching through the will to ascertain the meaning of other provisions and expressions? None was referred to on the argument, and after a diligent examination, I have been unable to find any.   Indeed the contrary rule seems to be well settled; namely, that a testator is in general supposed to calculate upon his dispositions taking effect, and not to provide for the happening of events which will defeat them as the death of devisees, legatees, &c.   The whole doctrine of *lapse* stands upon this principle.   2 *Atk.* 375.   2 *Powell,* 11 *Jarman's ed.*

Besides, no rule is better settled, or founded in more obvious sense, than the one which requires that all parts of a will are to be construed in relation to each other.   General words in one part may be restrained by subsequent words, and shall be construed so as not to defeat the intention of the testator, to be collected from any other part of the will.   1 *Burr.* 38.   4 *T. R.* 82.   8 *id.* 5.   *Powell,* 6.   I might also refer to a considerable class of cases, the principle of which has not been doubted, though there is some confusion arising out of its application, where a devise of real property is made after first directing a sum of money to be taken out *for the benefit of a charity,* which is void, and where such money partaking of the nature of the property out of which it is to be raised, has been abjudged to descend as an undisposed interest in the real estate to the heir, instead of sinking into the

inheritance and passing to the devisee. *Grosvenor* v. *Hallam*, *Ambler*, 643, is one of this class, and *Bland* v. *Wilkins*, cited 1 *Bro. Ch. Cas.* 61. Others will be referred to hereafter, upon a closer view of the case. Now in all this class of cases, it will be perceived that the void provision in respect to the charities must have been *regarded* by the court, and not only so, but a most important effect given to the words. If the clause had been considered as obliterated, as insisted upon here, the devisee of the estate out of which the sum of money was to be raised, would have taken it disencumbered of the charge—no words would have been left by which the court could have fastened it upon the devised premises. But instead of this, the provision, though ineffectual to carry the fund to the object of the testator's bounty, is considered as clearly indicating an intent to take it out of the estate devised, and hence not to give it to the devisee ; and thus the fund failing to the purpose of the testator, and not being otherwise disposed of, descends by force of law to the heir. I cannot doubt, therefore, that we are bound to read this clause in expounding the will ; and that though altogether ineffectual to pass the property to the church, it must be taken into our consideration the same as any other words, for the purpose of assisting in collecting the meaning of the testator in respect to other dispositions. Looking then at the words of the clause devising the property to the church under the most favorable rules of construction respecting the generality of the expression of the residuary clause, do they not evince a clear intent to except the premises from it ? The testator thereby contemplated giving them not to the residuary devisees, but to the church—to the " Minister, Elders and Deacons," and " their successors forever ;" and assuming, as I have shewn, that he is supposed to calculate upon his dispositions taking effect, it seems to me difficult to conceive of a stronger negative clause against a disposition to any other devisees.

The case was very ably argued by the respective counsel, both on principle and authority, and it was made very manifest that the adjudged cases, as well as the *dicta* of learned judges, are singularly contradictory on the point. For this reason I have

recurred to first principles, the only sure process by which to test the soundness or unsoundness of conflicting cases. But even the number and weight of the authorities, I think, are in accordance with these principles. *Grosvenor* v. *Hallam, Ambler,* 643, has been considered a leading case, and always referred to on the point. There the testator devised to his executors and their heirs a messuage, subject to the payment of the annual sum of £10, which he gave to charitable uses ; and he gave the residue of his real estate in trust, to be sold, directing the moneys arising therefrom, together with his personal estate, to be distributed as therein specified. The £10 annuity for charitable uses was void, and the question presented was, whether it belonged to the *heir,* or the *residuary devisee.* The fund was regarded as real estate, and there was no question but the residuary clause was comprehensive enough to embrace it. It is, therefore, impossible to distinguish it in principle from the case before us. Lord Camden held, that the heir was entitled. The rule as to real estate is, he said that where the intention of the testator is to devise the residue exclusive of the part given away, the residuary devisee shall not take that part in any event. He considered the rent charge of the £10 severed forever from the devise to the residuary legatees. The doctrine of this case was recognized by Lord Eldon, in *Tregonwell* v. *Sydenham,* 3 *Dow's Parl. Cas.* 212. *Baker* v. *Hall,* 12 *Ves.* 496, is also a clear authority for this principle. There the testator gave to a minister or clergyman of a certain parish forever, an annuity or rent charge, of £35, to be issuing out of a certain messuage, &c. for charitable purposes ; he then devised the same (subject to said annuity) upon certain trusts ; and devised all the residue of his real and personal estate, not therein before disposed of, upon other trusts, &c. The question was, whether the annuity, the devise of which was void, went to the residuary devisee, or to the specific devisee. Sir William Grant, the master of the rolls, said, that the testator appeared to have expressly excepted the annuity out of the residue of his estates, and could never have had it in contemplation that it should go in any event to the *residuary devisee.* It is true he held that it sunk for the benefit of the *specific devisee* :

whereas, according to *Grosvenor* v. *Hallam*, it should have gone to the heir. The heir, however, was not before the court, and his right does not seem to have been noticed. But so far as the principle is concerned, in the case before us, it is a clear authority against the residuary devisee ; because it directly decides, that a void devise of an interest in real estate is so far effectual as to evince an intent to take it out of the sweeping residuary clause, as much so as if it had been in every other respect valid. The case of *Gibbs* v. *Ramsey*, 2 *Ves. & Bea.* 294, decided also by Sir William Grant, about 14 years after *Baker* v. *Hall* was decided, is as follows : The testatrix devised her real and personal estate to trustees, upon trust to sell, and out of the money she bequeathed certain charitable legacies, which were void. . She then bequeathed the residue of *the moneys arising from the sale*, and all the residue of her personal estate, &c. The master of the rolls said it was clear that such part of the real estate as is given to charitable purposes belongs to the heir at law, and does not go either to the next of kin, or the residuary legatee. It will be seen that there could be no question here but that the residuary clause was comprehensive enough to embrace the fund bequeathed to the charitable uses ; because it included in express terms the rest and residue of the moneys arising from the sale of the real as well as personal estates. The case of *Jones* v. *Mitchel*, 1 *Sim. & Stu.* 290, decided by Sir John Leach, master of the rolls, in 1823, is also directly to the point. The testatrix devised her real estate, after certain limitations, to trustees, in trust, to be sold, and out of the moneys produced by the sale to pay certain legacies, and then a legacy of £800 to charities, and the residue to R. The master of the rolls held that the void legacy of £800 belonged to the *heir*, on the principle that the residuary devisee of real estate, or of the price of real estate, could take nothing but what was at the time intended for him. *His* words are worth transcribing, as distinctly marking the principle upon which I have supposed the case before us must turn. He observes, that the will as to *personal estate*, speaks at the time of the death of the testator, and the *residuary legatee* takes not only what is undisposed of by the expressions of the will, but that which becomes undisposed

of at the death by disappointment of the intention of the will ; it is otherwise as to the residuary devisee of *real estate,* or of the price of real estate, as to him the will speaks only at the time of making it, and he can take nothing but what is *at that time inten-ded for him.* The master of the rolls seems to have had in his mind the words of Lord King, in delivering his opinion in *Wright* v. *Hall,* a century before, and which are approved by Chief Justice Willes, in *Doe* v. *Underdown, Willes,* 299. He there said, speaking of a devise of real estate, that though the will was not complete until the death of the testator, so as to vest any thing in the devisee, yet that the intent of the testator is to be taken to be, as things stood at the time of making his will, for he makes it as if he meant to die that moment. The same view will be found in the case of *Smith* v. *Saunders,* 2 *Black. R.* 739, and in *Amesbury* v. *Brown,* there cited. The principle is also distinctly admitted by Lord Eldon, in *Tregon-well* v. *Sydenham,* 3 *Dow's Parl. Cas.* 194, where he observes : If the trusts had been to raise £20,000 for charities, (which we have seen would have been clearly void,) and after the sum had been raised, then to the devisees, as the intention would not have been in their favor, the heirs would have been let in.

Now, it is to be remarked in respect to all these cases : 1. That they afford conclusive authority that the words of the void clause of the will must be read, as effect was given to them in each case to except the estate from the residuary clause, under which it must otherwise have passed ; and 2. That they afford a most respectable body of authority, ancient and modern, upon the very point, in affirmation of the principle which naturally results on reading the clause, that though it fails in legal effect to carry the estate to the object intended, it clearly evinces an intent not to give it to the residuary devisee, and is, therefore effectual to separate the subject matter of the two devises; and then, in the absence of any effectual or executed intent, to pass this estate by the testator, being an undisposed interest it de-scended to the heir at law.

Another ground was also urged by the appellant, to wit : that here was a remote contingent interest undisposed of by the will

to the church, which would have passed under the residuary clause if the devise had been valid; founded upon the principle that the land reverts on dissolution of the corporation, or for breach of any condition upon which the property is given. I cannot think this view at all applicable to the case. It assumes, what is denied, that the devise is valid; for without this there can be no reversionary interest for the residuary clause to operate upon, and thus draw after it the body of the estate. The devise being void *ab initio*, on the decease of the testator the law must necessarily at once give such a direction to the estate as is in accordance with its principles. The *dissolution* of the corporation, or the *breach of the condition* of the gift, cannot have any effect upon the estate when the corporate body was never seized of it; the gift, of course, was nugatory. After this, the *contingencies* upon which the argument supposes the estate may pass, can never occur in respect to this estate, any more than they could in respect to an estate where a gift had never been attempted.

It was further insisted by the counsel for the appellant that a small portion of the premises, known as the *Shoemaker's field*, in possession of the defendants, was not embraced in the devise, and therefore undeniably passed under the residuary clause. This question turns upon the true construction of the description of the premises in the devise. The testator gives *all* his *right*, title, interest and property in and to *an equal fifth part, &c.*, of all that tract called and known by the name of the Shoemaker's field, &c., containing by estimation about sixteen acres; and which *tract* or parcel had been surveyed, and laid out some years before into 164 lots, with streets, lanes, &c., as would fully appear by an indenture with a map annexed, signed by all the proprietors, and by which it would appear that 35 of the 164 lots fell to the share of the testator, as therein marked, numbered and bounded. It further appears from the bill, and is admitted by the demurrer, that the testator, besides these lots, held as tenant in common with the other owners one-fifth of another part of the Shoemaker's field, which was left undivided, being about 200 feet by 100 feet, and which is also laid down

in the partition map *as not divided* among the owners. Now, the question is, whether this undivided piece is included within the devise, upon a sound construction of the description.

The terms of the devise at first are general, and undoubtedly sufficient to embrace both the divided and undivided parcels, but they are succeeded by a very exact and particular location upon the ground—which *tract* or *parcel*, he says, was divided into 164 lots some years before, with streets and lanes according to a map and boundaries in the deed of partition, where each lot is particularly described. A general description of a lot or farm by a common name, succeeded by a location upon the ground by ascertained metes and bounds, must generally give way to the ground lines and corners, as they show with the most distinctness the piece intended to be conveyed. Thus, if I have a farm of 500 acres, and 100 is surveyed off by metes and bounds, and I convey all my interest in the farm, bounded as follows, and then give the ground lines and corners of the 400 *acres*, or of the 100 acres, there cannot be a doubt but the latter description would control ; it is definite, and cannot be mistaken. I have not been able to distinguish this from such a case, upon the facts as pre- ·sented in the bill and answer. Nothing can be more minute than the particular description, and which restrains the general words, if any meaning at all is to be given to it. By this, the *Shoe- maker's field* referred to, means the part divided into city lots, with streets and lanes, according to a certain survey and map, thereby locating upon the ground by metes and bounds, by streets and lanes, the tract or parcel intended to be devised. It is true, the general description speaks of a *fifth* ; but, from the remainder of the description, it seems obvious the testator meant that it was a *fifth* which had been subsequently divided between the owners. I do not however say but that the facts may be so altered on the trial at law as to change this result. But it seems to me a sufficient title is here made out to the undivided part to entitle the appellant to the discovery sought in respect to this piece, so that he may be enabled to litigate the question before the more appropriate tribunal, a court and jury.

For these reasons, I am in favor of modifying the decree, so as to require a discovery in respect to this parcel, but for affirming it as to the 35 lots.

By Mr. Justice Cowen. It is admitted that the respondents were at the time of the execution of the will, and ever since have been a corporation, incapable of taking by devise or otherwise. The devise to them, therefore, was void *ab initio.* The question arising upon this state of the case is, whether the testator's interest in the land thus sought to be comprehended in this nugatory devise to the church, passed on his death to the residuary devisees, or descended to his heir at law.

If the devise to the church should be pronounced operative to take the land out of the residuary clause, a minor question has been made by the appellant, viz. whether the descriptive words in the devise to the church must not be construed to except the testator's interest in about 200 by 100 feet of *undivided land* lying between Nassau, William, Fulton and John streets, leaving so much at any rate to the undisputed operation of the residuary clause. The conclusion to which I have arrived upon the general question, renders it unnecessary for me to examine the restricted one.

Considerable time was devoted in argument to an application of the common and familiar principle of construction, that the intent of the testator is to govern. So far as the actual intent of the testator can be collected from the particular devise, no two minds will differ, and no two cases which ever spoke of the question have differed, that the intent of the testator is, upon such a will as this, precisely equal between the residuary devisees and the heir at law. By the devise of the land to the church, he intended to withhold it from both, and pass it to the corporation. It is equally clear, that had he stopped with the particular devise, it being void as a devise, the land would have descended ; because it is not sufficient that the testator manifest a naked intent, no matter how plain, to disinherit the heir. He will yet take if the land be not devised to another ; and this is not more out of favor to the heir than, according to the nature of the case and the

policy of the law, which assigns to every thing an owner. Were it not for such a result, the title must remain in perpetual abeyance. It seems to be equally well established, that this tendency in favor of the heir is not to be counteracted by the will, unless by clear words or necessary implication pointing out one who is to take adversely to him. *Per Lord Eldon, in Tregonwell* v. *Sydenham*, 3 *Dow*, 194, 210. The single question, then, upon which counsel differ, and upon which the cases have certainly run into some conflict, is whether, after a particular devise, utterly void at the time, the residuary clause contain such clear words as shall disinherit the heir.

There can be no doubt that the residuary words as here used or as they are commonly used in a will, plainly comprehend the land contained in the nugatory devise, provided that is to be considered void at the date of the will to all intents and purposes. The will must then be read without it. The case is the same as if the testator had run his pen through the clause, stricken it from existence, and then published his will. Has the law done this for him ? Has it declared the clause void *in toto* ? The appellant holds the affirmative of this question. The respondents agree that the clause is void, but only as a devise, as passing an interest to the church; but that it shall still stand in the will for another purpose, and enure as a descriptive exception from the residuary clause. They claim to read the residuary clause thus : "All the residue of my property, *excepting the lands above described.*" The appellant claims to read "All the residue of my estate except what is before disposed of." In general the legal effect of the residuary clause is to carry all the property and interest of the testator not before touched by the will; and it can make no difference whether the remaining property or interest were in his mind or not at the time. The words are of sufficient legal compass to take all interests which were not before *effectually devised* at the *date* of the will, from which time only devises made before the present revised statutes, 2 *R. S.* 2, § 5, were construed to speak. 1 *Powell on Dev.* 151, *Jarm. ed. Jackson, ex dem. Rogers* v. *Potter*, 9 *Johns. R.* 312. Here was never

any devise to the church which the law could notice as such ; and where the will says *all the residue of my estate except what is above bequeathed and disposed of*, the clause must be read in the light of the law.   What had the testator *as above bequeathed and disposed of* ?   Not the land ;, and he must be taken to have known that he had not devised the land.   Every testator is presumed to know the law, to write out the provisions of his will accordingly, and the case is the same as if he had recited a statute at length, declaring that a devise to this corporation should be void. It is the same as if he had said in the residuary clause, "I know that I have above failed to dispose of the land ; and all the residue not above disposed of, I give to my wife, her heirs and as-- signs forever."   18 *Wendell*, 297 *to* 300 ; *also* 291, 302, 303, *and the authorities there cited.*

It is said the statute of *mortmain*, being based upon local policy, was not imported to the colony of New-York, *Attorney-General* v. *Stewart*, 2 *Meriv.* 143, 156, and this was so held in the case cited by Sir William Grant, master of the rolls, with regard to the general statute of mortmain, 9 Geo. 2, c. 36.   That statute was passed in 1736, after the will in question had taken effect ; and the question, therefore, cannot arise here.   Were it necessary to consider the question in respect to the exception of bodies corporate in the statutes of devises of Henry VIII. the point would not be so clear.   This country was, except in its greater amount of unseated land, as much open to the evil of corporate perpetuities, especially those of ecclesiastical concoction, as the country from which we immediately derived our blood, our habits, our laws and our religion.   The church has, in all ages and countries, had many agents whose mistaken zeal was ready to turn the dying fears of testators to the purposes of pious testamentary donations.   The question, therefore, lay between depriving it of corporate powers altogether, or restricting its power of taking by devise ; and the latter was adopted.   It is a policy, in fact, to this day, common both to the English statutes and our own.   2 *Kent's Comm.* 282, 3*d ed.*   Accordingly I do not understand it to be denied that our ancestors imported the

common law, as qualified by the English statute of devises. While the common law absolutely withheld the power of devising, except by the custom of Kent, and a few other places, 1 *Pow. on Dev.* 2, 4, the statute, for the reasons of policy which I have mentioned, while it made the power general, and authorized natural persons to take, imposed an absolute disqualification upon bodies corporate. 1 *Pow. on Dev.* 9. We have, therefore, not only the special clause of prohibition contained in the charter of the respondents, which of itself avoided this devise in fact ; but we have a public statute known to the testator, and to be read as a part of his will, arresting and nullifying his attempt upon the principles of social policy. This view of the matter is, I think, sustained by the argument of the Chancellor in *The Canal Commissioners* v. *the People*, 5 *Wendell*, 445, and *Bogardus* v. *Trinity Church*, 4 *Paige*, 198. It appears to me, therefore, that upon principle the devising clause to the church must be regarded as void both for the purposes of devise and exception ; that consequently the will should be read without it; and, being thus withdrawn, the residuary clause is left plainly to operate.

In respect to the cases upon this question, where the particular devise is void *ab initio*, even irrespective of its being so declared by a public statute, and even though the fact which renders it null may be unknown to the devisor, those in the *common law courts* are quite uniform, that the residuary devisee shall take. So far as I have been able to search, the case of *Greene* v. *Dennis*, 6 *Conn. R.* 292, is the only exception. A majority of the cases in *chancery*, though they agree that the particular clause cannot be read as a devise, retain it as an exception from the residuary clause, and by reading it as such, create an equilibrium, which the law turns in favor of the heir. But it seems to me the difficulty is very great in saying, that if it be void as a devise, the testator still intended to avail himself of it for the purpose supposed. For aught we can see, even without the general clause, it was at least indifferent to him in point of fact whether the land should go to the heir or not. The general clause is plainly sufficient both in legal effect and in literal mean-

ing, to carry it away from the heir. Taking the whole therefore, I should infer that the latter was the real intent. By the residuary clause he designates a general heir to whom he intends every-thing shall fall which has not been before *effectually disposed of.* If this be not so, it is difficult to account for the use of words so comprehensive. The reasoning of the courts of law and the common sense of the case, as summed up in *Doe ex dem. Stewart* v. *Sheffield*, 13 *East.* 527, is, to my mind, entirely satisfactory; and I feel an increased confidence in its soundness and safety, when I find it adopted by the supreme courts of Massachusetts and Delaware, acting independently of each other's authority. *Hayden* v. *Stoughton*, 5 *Pick.* 528, 536, *Putnam, J. and books there cited. Doe, ex dem. Ferguson,* v. *Roe,* 1 *Harrington,* 524. My opinion is that the decree should be reversed.

By Senator HENRY A. LIVINGSTON. The question respecting this property, now under consideration, has for some time past agitated all the parties concerned or connected with the result. It is brought on an appeal by Lawrence L. Van Kleeck, against the Dutch Reformed Church in the city of New-York, on a decision made by the chancellor. The counsel engaged on both sides have endeavored to appeal to the common sense of this court, as well as to strict and established rules of law; and on that ground I feel emboldened to offer an opinion; I shall there-quote but one authority in this case, and that shall be " the opinion of common sense."

I cannot be supposed to follow the various wanderings and labyrinths of the law, that have been with so much labor and eloquence brought before us; but a few facts, founded and connected with the case of this will and devise, may not be improper, even in one not aspiring to a profound knowledge of legal or technical learning.

The corporation of the Reformed Dutch Church in New-York are in possession of certain lands in that city, which the complainant avers they hold under the will of John Harberdinck, and that the devise under the will is void, because the church,

as a corporation, is incapable of taking such a gift, and he claims a discovery and disclosure of the will, from the officers of that church, and an account of the income derived from the property.

The church deny the right of the complainant, as stated by him, to compel them to produce the will, and say, that if any individual or person whatever is entitled to make such demand, it is the heir at law and not the complainant, and this appears to be the whole question now before this court.

In judging upon wills, the rules of law appear to be founded upon the intention of the testator, and our first business then is, to find the meaning originally intended to be conveyed and understood, by the person making the will. By this will John Harberdinck gives sundry legacies to his own relations and friends, and he then gives to the Reformed Dutch Church of the city of New-York the lands now in dispute ; their possession to commence after the death of his wife Mayken Harberdinck, and the income of the lands to be applied to the support of the ministers of the Reformed Protestant Dutch Church of New-York, and to all such ministers, who should in all future time be regularly called as such, and he declares his intention that it should never be applied to any other purpose. The testator then gives the remainder of his estate, real and personal, none excepted, whether the same shall consist in houses, lands, goods, chattels, gold, silver, moneys, negroes, bonds, mortgages, bills, book debts, or any effects, or estate whatsoever, none in the world excepted, unto his wife Mayken Harberdinck, during her life, and after her death he gives the remainder to his wife's relations. The ancestor of the complainant was entitled to one quarter of this residuary property—provided, and on the express condition that the residuary devisees, before they should be entitled to receive the same, should justly account and pay whatever of them were severally indebted to his estate, be it by account, bill, bond, mortgage, or any other way whatever. Now, at this remote day, we are wholly ignorant how, and in what manner, these accounts and debts were settled. Some of those persons may have forfeited their right by not paying what they owed to his estate, or

perhaps all the residuary devisees have forfeited their rights by not fulfilling the terms of the will.

It is very evident that the testator intended to give, after the death of his wife, those lots previously in his will bequeathed to the church, in the fullest and most complete manner. He meant to dedicate those lands and their income to the maintenance of piety and religion, by supporting faithful ministers of talent, learning and character, in the church of which he was, no doubt, a worthy and pious member. He never contemplated that this property so given should enrich any individual, either his own or his wife's relations. His intention was to separate it from his other temporal possessions, and devote it to the noble purpose which he has expressed in his will. Then how does the complainant suppose himself to obtain a title? His ancestor was only to take one fourth of that remainder, which was given to Mayken Harberdinck during her life, and to her was given only the remainder of what was left of the estate, after the gifts and bequests to others should be completed and satisfied. It appears clearly that these lands were only intended to be enjoyed by the wife while she lived. This is not only evident from the expressions of the gift to Mayken his wife, but also from the character of the devise to the church : that is, a donation or gift clearly showing that this land was not intended by the testator, old Mr. Harberdinck, for any private or individual use or emolument. It was his intention, by the plain words of the will, to make a division of his estate, part for the use and benefit of man, and part for the service of his God ; and whatever conclusions learned counsel and judges may arrive at, respecting the legality of the gift, no one can doubt the testator intended this separation.

If, then, the testator did not intend or contemplate these lands to be enjoyed by individuals, the complainant's title must depend upon some rules of law different from carrying into effect the intention of the testator ; or upon the right of courts to conjecture what the intention of John Harberdinck, who died more than a century ago, would have been, if he had known the gift to the church by him to have been void. As to any such right

to conjecture, it is too unreasonable and uncertain to be at any time permitted, and no law case gives countenance to any such pretensions. Then, as to the law. It does not appear to have been denied by counsel, that if the will of the testator does not convey the property, it cannot be held except by his heir. The rule of law is a very wise one, as avoiding the uncertainty of titles, when a clear intention on the part of the testator is not made out to the contrary, and also commends itself to the feelings of mankind, on which it is no doubt founded. The heir at law is the nearest relative of a man's own blood ; to give the property to him, therefore, most commonly fulfils the just expectations of mankind growing out of their relationship. It helps to keep up the respectability of names and families, which all men are gratified with ; it also connects itself with the order of society in regard to marriages, legitimate births and social connections ; and on the whole, it rests on every principle which should be the foundation of rules and laws.

The only other ground on which the complainant founds his title is, that as the intention of this testator to give to the church was illegal, it cannot be taken into consideration in our investigation respecting the gift of the rest ; but this is by no means reasonable ; we must look at it with an endeavor to find out the testator's actual meaning of what he intended, when he speaks of the remaining part of his estate. The words " remaining part," give us to understand that something is separated. It tells us of a subtraction, nor can this subtraction be denied, because the purpose for which the part is taken away cannot be carried into effect, or the amount known, until the separation takes place ; then, and not till then, is the remainder found. It has been argued that the devise to the church was illegal ; it may be so, that the policy of the law does not admit of gifts by will to a corporation ; but when it is carried so far as to say that a gift for the promotion of piety and virtue is illegal, in such a sense as that judges must shut their eyes upon it, or look upon it with aversion, I must say it is a doctrine of which I am ignorant. I wish never to be so learned as to discover any

thing in the virtuous intention of aiding and promoting the worship of God, or the benevolence of man to his fellow creature, to be hurtful to the state. On the contrary, I shall always be glad to open my eyes and look with pleasure upon such purposes; and should the result of this case ever be that the lands in question should escheat to the state of New-York for want of heirs, it would, in my opinion, redound to the honor of the empire state to confirm to this church what John Harberdinck intended they should have. In the will of Mr. Harberdinck, he was mindful of his relatives in this country as well as of the church. He gives to Asweris Harberdinck the sum of fifty pounds. At first view this might appear a small affair, compared with what is now the value of the Shoemaker's field; but a hundred and more years ago, fifty pounds sterling in gold, to a young shoemaker just starting into life, was far better and more valuable to him than an undivided share in a cow pasture, as it would enable him to commence his trade; and I make no doubt young Asweris wished to have this cash, rather than a share in what was then wild land; and calculating the value of property at an ancient date, it was the full value of his share, or what he had a right to expect from his aged relative. We have not yet so many liberal gifts for public purposes, as either to endanger the state, or to render more benevolence unnecessary; and while I watch the progress of the future, yet I would not be suspicious of the past, and would prefer confirming rather than destroying the monuments of the piety and zeal of our ancestors. Taking, therefore, all the circumstances in this case as connected with this will, it appears to me, that the possession and emoluments of this estate, are exactly what was intended and wished by the testator, who felt an interest for his mother church, a branch of which was established in this country, and his genuine Holland blood flowed with a thrilling pleasure in performing what he did; and that church has from his munificence grown and prospered precisely as he anticipated. When he gave this property, it was as a grain of mustard seed, but now by the lapse of a century or more, it has become a full grown tree,

and the fowls of the air now seek a shelter under the shade of its branches; the plain and fair interpretation of this will, then, it appears to my mind is fulfilled.

The counsel on both sides have given a latitude to their imaginations, and indulged their fancies with a peep through the long avenue of times past, and conjured up the form and figure of the testator. I also can paint to my imagination, the venerable Hollander, seated in his arm chair, which he brought with him from Holland, about commencing with his will. I see his anxious countenance and venerable form, slowly yet firmly grasp his pen and commence the solemn writing, with these words : " In the name of God, amen ; " with much thought and reflection. He bestowed what he then pleased upon his relatives and friends; his brow was melancholy and heavy, until he came to the clause beginning with item, I, the said John Harberdinck, do hereby give, devise and bequeath, unto the Minister, Elders, and Deacons of the Reformed Protestant Dutch Church, of the city of New-York, and their successors, forever. Then a calm serenity came over him ; he felt that he had fulfilled the main object of all his earthly exertions, which was to do all the good he could during life, and then when eternity appeared opening before him, he found a pleasing reflection, that he had just completed what was near and dear to his heart ; and with a smile on his countenance, and a contented mind, I can see him calmly resign his spirit to his God who gave it. Often have I observed the picture, with the coat of arms suspended on the wall over the pulpit, in the North Dutch Church, in the city of New-York, in William-street, said to be of the Harberdinck family. The motto underneath is, *Dando Conservat.* Until now I have been ignorant of the interpretation ; but by becoming acquainted with this will, it appears to me easily construed. By giving he has preserved it.

In the language, then, of the chancellor, in which he says the result at which he has arrived, upon a full examination of the subject, is, that there is not sufficient appearing upon the complainant's bill, to show that the residuary devisees of John Har-

berdinck ever had any legal or equitable right to the premises in controversy in this case; and from the examination I have made, I am clearly in favor of affirming the learned and able opinion of the chancellor.

By Senator VERPLANCK. The bill in this cause, being for the discovery of the respondent's title, as a foundation for establishing the title of the complainant to the large real estate held by the Dutch Church in New-York, as well as to bring them to account for its rents and profits, it is admitted that the complainant must show on the face of his bill a perfect *prima facie* title in himself, before he can call upon the parties in possession to disclose their own title. This has been put, in the course of this cause, upon the requirement of the rules of pleading in our court of chancery; but I consider it as holding a much higher rank than that of a mere artificial or conventional rule of pleading, the abrogation of which might give new enlargement to the increased and increasing jurisdiction of chancery. The rule of equity, as expressed in the English decisions, that " to enable a party to claim a discovery, he must show an interest in the subject matter to which the discovery is attached, capable and proper to be vindicated in some judicial tribunal," is a fundamental doctrine of this branch of jurisprudence, and rests upon the soundest policy. Its object is to discountenance and check vexatious litigation, and preserve the quiet of society by protecting old possessions with all the complicated interests commonly dependent upon them, from the assaults of speculative and privateering adventurers, by withholding from such claimants that aid which it is the office of equity to afford to the fair suitor seeking only for the legal evidence of his probable rights. It comes to us not only with high authority from English equity and our own, but with the additional evidence of experience to attest its value, by the numerous evils that have been caused wherever it was neglected. *See Wigram's Points in Law of Discovery.* The rule itself is not now questioned; but I could not refrain from these passing remarks, because I hold it important for the general interests of

society to place it upon its strongest ground, as well as to apply it strictly and rigidly.

What may be the precise ultimate ground on which the church rests its title, does not now appear. Whether it relies upon title from some source other than that shown in the case or on any peculiarity of the ancient colonial law, as has been intimated in the argument, we are not to inquire at present. The sole question now before us is, whether the complainant makes out a legal *prima facie* title in himself; since taking the case as it now stands in the pleadings, it must be assumed that the devise to the church was wholly void, as it would be at present under our statute of wills and the decisions of this court.

It is allowed by the complainant's counsel that the authorities are full and strong, and the law well settled, that devises valid at the time of their being made, but *lapsing* by reason of the devisee's death before that of the testator, fall to the heir at law, and are never to be considered as included in the general words of a *residuary devise*, however broad or general they may be. This doctrine is put by Chief Justice Willes, Chief Justice De Grey, Lord Chancellor Hardwicke, Judge Buller and other eminent Judges, on the ground of the testator's probable intent, coupled with the positive institutions of the law of descent. The testator, in all such cases, it is held, must presume that he has effectually disposed of all those particular estates thus specifically devised. Then, when he devises to his residuary devisee all the rest and residue of his real estate, he can only mean all his real estate except such as has been before specifically devised; just as if he had actually devised in express words all his real estate, with those exceptions specifically enumerated and described. Then as the special devises fail or lapse, the testator is found to be, *pro tanto*, intestate, and the law of descents gives those lapsed portions as to which he is intestate, to his heir at law. The language of the courts, as used by the great judges above named, is this : " The right of the heir at law does not depend upon the intent of the testator to give him that part of the estate ; but upon the principle that the law gives the heir

title to every part of the estate which the testator has not shewn a clear intent of giving to somebody else capable of taking it."

It is, however, now contended, that this rule does not apply to devises void *ab initio*, from the incapacity of the devisee to take, or as illegal and contrary to public policy, such as those to religious corporations. These, it is argued, must be treated as mere nullities, must be stricken out of the will, and must for all purposes of construction be regarded as if never made. Then it follows that the specific devise cannot be considered as excepted from the general residuary devise, but must be actually comprised within its words. To my mind, this distinction appears too technical and artificial to form a sound rule for the interpretation of the testator's intent, unless it be clearly so settled by former decisions. I cannot perceive any sufficient reason upon general principles of interpretation to take devises, void for incapacity in the devisees, out of the broad rule of lapsed devises. The intention of the testator must be the very same. The testator, alike in cases of devises lapsing from their own inherent vice, because illegal or impossible, and in those lapsing from an external cause not within his probable contemplation, expects both to take effect. He presumes the first devise to be to persons legally capable of taking it, but he is mistaken as to the law ; he presumes the other to be to persons who will be naturally capable of taking in the ordinary course of events, and in this expectation he is also mistaken. His intention as to the residuary devisee cannot but be the very same in both cases. It is to give to him all his estate except that part which he had appropriated to another purpose, whether actually a legal purpose, or only one erroneously presumed to be so. He certainly never means to give him that part which he expressly appropriates to another object, although that appropriation becomes ineffectual by operation of law. The testator neither means to give such a devise to his heir nor to the person he selects as his residuary devisee. The devise fails ; no matter for what cause. The law of the land then comes in and declares, " this man might have bequeathed his real estate to any one whom he thought

fit to choose, with certain exceptions prescribed by public policy. In consequence of either the law, or the fact, turning out differently from his belief or expectation, he has not made such a devise of this part of his real estate as to take effect at his death; therefore he so far dies intestate, and the general rule of descents must give to his heirs all the real estate which he has not effectually devised."

Such a conclusion, I think, would be inevitable, were we now to settle the law without the light or the obligation of past decisions. It appears to me to be also the fair conclusion to be drawn from the authorities. The cases are undoubtedly not a little variant. The distinction relied on by the complainant between devises lapsing, because void in their inception, and other lapsed devises, was spoken of incidentally with some approbation by Ch. J. Willes, in his elaborate and lucid opinion in *Doe* v. *Underwood, Willes,* 293 ; but the decision in the case does not rest upon this distinction, nor necessarily imply its accuracy. In late years, the opinions expressed by every member of the court of king's bench, in *Doe* v. *Sanford,* 13 *East,* 526, (though here again not forming the ground of decision of the cause,) are still stronger, and go beyond the case of devises, void for illegality. Several other English cases looking the same way, as well as the express decision of the very respectable supreme court of the state of Delaware to this very point, 1 *Harrington's R.* 256, present no small weight of authority in favor of the claim of the residuary devisee to devises lapsing from their inherent legal defect. Nevertheless, after carefully examining the English and American cases referred to in argument—after consulting not only the express decisions in the courts of common law on the conflicting claims of heirs at law and residuary devisees, but also those in law and in equity on the collateral questions as to the comparative rights of the same parties in respect to pecuniary charges on real estate, void or failing ; or as to particular estates or terms created for purposes not sustained by law, or otherwise failing—I have arrived at the decided opinion, that the preponderant weight of authority

is in favor of the *heir*, and accords with the rule I have above stated as the fair conclusion from general principles. The English cases on which I most rely, are those of *Grosvenor* v. *Hallam*, before Lord Chancellor Camden, 2 *Blunt's Ambler*, 645; *Smith* v. *Saunders*, 2 *W. Black.* 736 ; *Hutcheson* v. *Hammond*, 3 *Bro. Cas.* 1128; *Collins* v. *Wakeman*, 2 *Vesey, jun,* 683 ; *Tregonwell* v. *Sydenham*, in *Dom. Proc.*, 3 *Dow's R.* 194. With these concur the doctrine of Chancellor Hansen and the Maryland court of appeals in 3 *Har. & McHen.* 333, and that of the supreme court of Connecticut in a recent case, *Green* v. *Davis,* 6 *Conn. R.* 292. The chancellor has gone so fully into the history of the law, and the learning of the case, that I shall not attempt to go over the same ground in detail. I concur entirely in his conclusions on this part of the case.

There is another point important to the decision of this cause in its present stage, which the chancellor has not discussed, and which it is understood was not argued before him. It is whether or not the words of description in the devise of the lands in question passed the whole interest and estate of the testator in the Shoemaker's field, or only the lots which he held in severalty, leaving an undivided residue not disposed of. His will gives and devises, " all that my testator's right, title, interest and property in and to an equal fifth part, share and proportion of all that tract or parcel of land called the Shoemaker's field, on the N. E. of Maiden's Lane ;" "which tract contains about sixteen acres: and by agreement of all the proprietors was surveyed and laid out into one hundred and sixty-four lots, with convenient streets and lanes to accommodate the same, as may fully appear by a certain instrument, with the map or chart thereof :" which instrument is there described. He then says, " By which indenture, with the chart annexed, it is declared and agreed that the said Harberdinck's *proprietie*, share and dividend in the said one hundred and sixty-four general lots should be and consist in thirty-five lots described, markt and numbered," &c.: all which, describing by number and bounds, he devises to the Dutch church, " with all and singular the buildings, messuages, emoluments,

profits, benefits, reversions, advantages, hereditaments and appurtenances thereunto belonging or in any wise appertaining, or reputed or esteemed as part or belonging to the same." It is alleged by the complainant, and not denied, that a portion of this tract, being about two hundred feet in length and about one hundred in breadth, was left undivided by the proprietors. This undivided estate is not enumerated amongst the lots devised to the church ; and if it is not included under the general description, as it certainly is not in the particular enumeration, there would then be left a residuum not intended to be disposed of by the testator, which would pass to the residuary devisee. If so, this land being in possession of the church, here is a sufficient foundation for a bill of discovery in equity, as there would be for a suit in a court of law for the recovery of so much of the land, unless that recovery were barred for some other reason.

I think, however, that the construction of this devise must fall within the rules established in our courts, as stated by Chief Justice Spencer in *Jackson* v. *Loomis*, 18 *Johns. R.* 81, and affirmed by the unanimous vote of our own court on the opinion delivered by Chancellor Kent, *S. C.* 19 *Johns. R.* 452 : " If there be certain particulars sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant." The same doctrine is held and applied by Chief Justice Savage in *Doe* v. *Roe*, 1 *Wendell*, 550. Here the whole of Harberdinck's " right, title, interest and property in the land known as the Shoemaker's field is devised," in words and with particulars that sufficiently " designate the thing granted." Nor should any part of that devise be " frustrated " by reason of an additional description or recital of the several lots, " false or mistaken," so far as it omits to mention as part of that whole interest the undivided share of a lot admitted to be part of Harberdinck's estate and interest in that field. The later English cases, as *Goodtitle* v. *Southern*, 1 *Maule & Sel.* 299, and *Dow* v. *Dow*, 7 *Taunt.* 343, sustain the same rule in substance as it was laid down by Lord Mansfield in *Paul* v. *Paul*, 2 *Burr.* 1089, " that

words not of limitation or restriction, but of description, will not vitiate any thing sufficiently described before." I cannot conceive any words more perfectly answering to the meaning of " words of description," than those in which the testator in this cause enumerated the lots which had fallen to him in the Shoemaker's field ; whilst the general description of that field, and the devise of all his interest, right, title and estate therein, seem to me to describe sufficiently the whole property devised, which cannot therefore be vitiated by a defect in the enumeration of the lots. I regard the rule itself as one of very great value. It was not arbitrarily or hypothetically established, but was generalized by legal experience from a number of decided cases, in which it had been the object of the courts to ascertain the true meaning and intent of the grantor or testator. To disturb it by any contrary decision, would be to infuse more or less doubt and uncertainty into every conveyance or will, where the description of the estate granted is not made out with rigid and technical accuracy. If this be a sound and valuable rule in the interpretation of *deeds*, always prepared with due deliberation and commonly with professional assistance, how much more just and right is it to apply it liberally to *wills*, which must be so often unskilfully and incoherently drawn, and where it is admitted that the intention of the testator is the first and great object of inquiry.

But again : even without the authority or the guidance of this wise legal rule, we shall be led, I think, to the same conclusion, by an attentive examination of the words of the devise itself, if we give to them that liberal and fair interpretation which, from the nature of the instrument, they are entitled to receive. For I cannot think that the words, following the enumeration of the lots, " all which lots and parcels of land I devise," " with all and singular the buildings, messuages, reversions, advantages, hereditaments, and appurtenances thereunto *belonging or in any wise appertaining or reputed or esteemed as part or belonging to the same*," to be of no force or meaning whatever. These and similar " drag-net words of the law," as Lord Mansfield has

Van Kleeck *v.* Dutch Church of New-York.

somewhere called them, are not without meaning because they are customary and common. On the contrary they are customary, and frequently employed precisely because they have a useful meaning. They are employed with the express intention of covering whatever might be accidentally omitted in express description, though intended to be included in the grant. So they seem to be meant to be employed here. Taken in connection with the broad and comprehensive words of the devise of Harberdinck's whole interest and estate in the field, they may naturally be interpreted to include all the undivided interest and estate in the property, appurtenant to the lots held by him in severalty. It is expressly admitted that the undivided fifth part of this parcel of land was a part of Harberdinck's property in the Shoemaker's field; then, supposing the devise to be otherwise valid, it requires the most strict and rigid rule of interpretation to exclude it from passing both under the general words of " all his right, title, interest and property in and to an equal fifth part share and proportion of that tract called the Shoemaker's field," and also under the subsequent words, as " hereditaments [a remarkable and most comprehensive phrase] and appurtenances belonging to the lots held in severalty, or in any wise appertaining, or reputed or esteemed as part and belonging to the same."

It was also argued that there was still another residuary and contingent interest arising from the possibility of a dissolution of the corporation or of a breach of the conditions imposed, whereby the whole devise might revert, and that such possibility was sufficient to form a contingent interest passing under the residuary devise, which, however uncertain and improbable, is yet sufficient to support a claim for discovery or even to show that it was not the testator's intention to exclude from the residuary devise, the specific bequest, if it should lapse. It appears to me that neither the reason of the thing nor the cases cited bear out this proposition. When a specific devise is made, to take effect on performance of a given condition, or upon some express contingency happening, there is evidently a reversionary and contin-

gent interest, which it is apparent from the will itself was within the intent and contemplation of the testator. Its existence is implied in the very words expressing the condition. It is therefore but a reasonable presumption, that the testator meant that such reversionary contingency which he has himself expressly created, should pass under the general words of a residuary devise. The authorities cited, as *Goodtitle* v. *Knot, Cowp.* 43, *Hayden* v. *Inhabitants of Stoughton,* 5 *Pick.* 528, and others, (most of which have been noticed by the chancellor,) go only to the case of such devises as it is evident that the testator regarded as contingent ; as where an estate was devised for payment of debts, in case the personalty was insufficient for that purpose, or where there was money to be paid, or some specific act to be done, as the express condition without the happening or performing of which no estate was to pass. Here there remained an interest which the testator could not but have had in view, and which he must have considered as possibly to form a part of his residuary estate not specifically devised, at the very time that he devised that residuum. But Harberdinck devises absolutely to the corporation of the Dutch Church, " to be received and employed to the proper use, benefit and behoof, and for the payment of the salary of the minister or ministers, and to no other use." Here is an absolute devise to a corporation for certain purposes, being in furtherance of the very objects of their creation and within their powers, and the right application of which, if the devise were otherwise good, equity, in case of abuse, could compel. It is not a devise on condition of supporting ministers, upon failing to perform which the estate would revert. The misapplication of the fund would not work a forfeiture ; it would be a breach of trust to be corrected by judicial authority. It is not reasonable to suppose that such an interest was within the possible contemplation of the testator.

For these and other reasons assigned by the chancellor, my opinion is, that the heirs at law can alone take advantage of the defective title of the church, (if such it be,) and are alone enti-

Van Kleeck *v.* Dutch Church of New-York.

tled to a discovery; and that therefore the decree of the chancellor should be affirmed in all things.

By Senator WAGER.   There are two principal questions in this cause : 1.  Did the land attempted to be devised to the church, pass to the *residuary devisees,* under the will ; or did it descend to the *heir at law* of the testator.  2. Supposing the land attempted to be devised to the church, descended to the heir, did that attempted devise embrace the *undivided portion* of the Shoemaker's field.   If either of those points are determined by this court in favor of the appellant, then it follows that the demurrer should have been overruled by the court below, and that the decree there rendered must be reversed.

If the devise to the church can be regarded by the court as a portion of the will, for the purpose of collecting the actual intention of the testator, in the disposition of his estate, there can be but little difficulty in coming to a conclusion, that the testator's intended bounty to the church in this case, does not fall into the *residuum* for the benefit of the residuary devisees, but goes to the testator's heirs or escheats for want of heirs.  My first impression was, that a devise which was void for want of legal capacity in the devisee to take, was to be regarded, for the purpose of construction, as no devise; and that the will was to be construed as if it had never been incorporated in it ; that no particular intent of the testator could be looked to as shedding light upon the whole of his intention, but such as would cast his bounty upon an object which the law had not deprived of the capacity to take that bounty.   My examination of the cases cited by the counsel on the argument, and those referred to by the chancellor in his opinion, has not confirmed this impression.   That examination has led to the opinion that we must look at the different parts of a will, whether valid or invalid, as reflecting light upon other parts, and as indicating the intention of the testator ; which must control in the disposition of his property by will.   Possibly the law may exclude from the consideration of the court a devise which the testator was inhibited from attempting.   But whatever the law

may be in such case, the one under consideration does not come within the rule. The devise to the church is void, simply because the law has not given to it a capacity to take or hold property beyond a certain amount, which amount it had acquired and held at the time of the devise. The devise in this case is, in most respects, analogous to a devise to one who is dead at the time. Neither have a being capable of taking. A devise to either is not, as it regards the testator, either *malum in se*, or *malum prohibitum*.

I do not deem it necessary to refer particularly to the cases which show, that courts may, in construing wills, look to a devise to one legally incapacitated to take, as throwing light upon the intention of the testator in the disposition of his property. They are most of them referred to and ably commentated upon in the chancellor's opinion. The cases of void devises, whether arising from the death of the devisee at the time of the devise, or the legal incapacity to take, relied upon by the chancellor in his opinion, all turned upon the ground that the particular intent to devise the specific property, excluded it from the *residuum*, and consequently left it undisposed of by the will. There are but one or two cases which hold that property attempted to be devised, is cast into the *residuum* for the benefit of the residuary devisee, and they have not since been recognized in any case that I can find where they were directly in point : those cases did not receive that careful consideration which was bestowed upon the cases relied upon by the chancellor. The principal case, that of *Doe* v. *Sheffield*, turned almost entirely upon another ground, though the judges all concurred in opinion that the residuary devisee took what was attempted to be given to a person who was deceased at the time of the making of the will.

The law is well established both in England and in this country, that a *lapsed devise* goes to the heir, and not to the devisee of the *residuum*. The devise of real estate, operating only upon the land of whch the testator was seized at the time of making his will, he having showed an intention to give away the land specifically devised, to the exclusion of the residuary

devisee, it is not presumed that he intended to devise by the residuary clause, a contingency which he could not have foreseen, or to embrace in it lands contained in the lapsed devise. *Doe* v. *Underdown*, *Willes*, 293. *Durour* v. *Matteux*, 1 *Vesey*, 322. *Vide also* 4 *Kent's Comm.* 525, 526. The law, however, in relation to *lapsed legacies* is different. In such case the legacy goes to the residuary legatee. The reason assigned in some of the leading cases being, that the personalty being of a more fluctuating nature, the will is to be constructed in relation to the situation of such property at the death of the testator ; which in consequence of the death of the object of the testator's bounty, or other causes operating to defeat that bounty, would be embraced by the residuary clause. 2 *Black. R.* 738. 15 *Vesey*, 709. 4 *Kent's Comm.* 525. This rule of the common law, as regards personalty, was adopted at an early day, when personal property was not of as much consequence as real, and consequently did not engage the scrutinizing attention of the courts. It has, however, whether arising out of the civil law, as some suppose, or from the nature of the thing regulated, become the established law of the land.

Chancellor *Kent*, in his Commentaries, *4th vol.* 527, supposes that the alteration of the law in New-York, making the devise operate upon all the real estate owned by the testator *at his death*, may produce the effect of destroying some of the distinctions between testamentary dispositions of real and personal estates. *Vide Notes of Revisors*, § 7, *ch.* 6, *tit.* 1, *part* 2. The provision of the statute was intended to embrace real estate acquired subsequent to the making of the will. The principle adopted is a broad one, and may operate to break up the distinction which now exists between lapsed devises and lapsed legacies. It can, however, be applied only to such wills as have been made since the alteration of the law ; it has no application to the will under consideration. I consider the rule well established at common law, that devises of real estate are to be construed in relation to the situation of the property at the time of executing the will.

*If*, then, we are to regard a void devise as evidence of the tes-
tator's intention, and to act upon such evidence of intention in
determining the estate of residuary devisees, I can see no well
founded distinction between a case where the invalidity of the
specific devise arises out of the incapacity of the devisee from
any cause to take, and one where the devise lapses on account
of the death of the object of the testator's bounty. In either
case, there is a clear actual intent, at the time of making the will,
to exclude *both* the heir and residuary devisee from a participa-
tion in the estate attempted to be specifically devised. It remains,
then, so far as actual intent is concerned, undisposed of by the
will. The law, which declares that the heir shall not be disin-
herited but by express words, or clear and necessary implication,
steps in and gives him the estate. 2 *Vesey*, 225. 3 *id.* 493. 1
*Ball & Beat.* 543. There is nothing in the will of Harberdinck
which tends to show an intention to give the property in ques-
tion to the residuary devisees, except the implication arising
from the general intent not to die intestate as to any part of his
estate, and the fact that he had devised the residuum to the
exclusion of the heir. But this implication would be equally
strong in favor of a devisee or legatee, to whom he had specifi-
cally given particular portions of his property. In both cases, he
makes those *objects of his bounty* who are not of his blood, to the
exclusion of the heir : and yet it would hardly be pretended that
a specific devisee in such a case would take the subject of a void
devise to another. . If it be said that the devise of the residuum
was specific, and excluded what was before given, the answer is,
every devise of real estate must in its nature be specific, whether
made in special or general terms. 7 *Vesey, jun.* 147. Conse-
quently, what has before been devised or attempted to be devised,
must be excepted, unless the language used is such as to show an
evident intention of the testator to embrace such preceding
devises as shall fail. It was also said that the rule of law which
favors the heir, against the general intention of the testator to
dispose of all his estate by will, arose in an aristocratic age, is
calculated to keep large masses of property in few hands, and is

Van Kleeck *v.* Dutch Church of New-York.

consequently repugnant to the genius of our republican institutions. The effect of the rule in England, where the law of primogeniture prevails, and where large estates descend to one, to the exclusion of many other of the children, may have been contrary to the spirit of our institutions. But here, where all the children inherit equally, I can see nothing in it which is against our notions as to the division of estates. Nor does it in the least conflict with the right of the owner of property, to bestow his worldly substance upon such as he may choose to make the recipients of his bounty.

The intention of the testator is the first and great object of inquiry in the construction of wills ; to it technical rules, which prevail in respect to other dispositions of real estate, are to a great extent subservient. If that can be determined, it is the pole-star by which courts must be directed in the administration of justice. With this great principle in view, it is nearly impossible for any one to read the will of John Harberdinck, and say that he intended to give the property in question to the residuary devisees. What he does give to them is the "rest and remaining part of his estate, except what part as above is bequeathed and disposed of ;" in other words, except the specific portions above carved out by him, and which he has devised to others. Words could not make the intention plainer than it is made by this will. But it is said that it is not *devised* to the church, though such was the intention of the testator. To this it may be answered that he did not intend to give nor has he given it to the *residuary devisees.* To whom then shall it go ? The answer is plain ; to those who the law declares shall take all which the testator has not given to others, though it appear to be his intention that they should not inherit his worldly substance. The heir takes even against general intention.

The counsel for the appellant contend, that notwithstanding the testator's attempt to devise the land to the church, and admitting that he actually intended that the residuary devisees should take nothing which he had attempted to give the church, there yet remained in legal contemplation a residuary and contingent interest, founded on the condition annexed by law to ev-

ery devise of this sort, that the land may revert by the dissolution of the corporation, or by breach of the condition on which the devise is made ; that this residuary and contingent interest was a proper subject of devise, consistently with the declared intent of the testator; and even had the devise been valid, would have gone to the residuary devisees. That the descent to the heir was thus broken; and that the actual devise of the reversionary and contingent interest to the residuary devisees, drew along with it the whole estate, the devise to the church being void. If the will in this case had been so drawn as to make it apparent that the testator contemplated the events which would work a dissolution of the corporation, and had the church been able to take, the position of the counsel as to the devise of the reversionary and contingent interest, may have been good. In such case, the residuary devisees could take only the reversion, after the existence of the corporation should cease. The cases where a reversionary and contingent interest in real estate have been held to pass by the devise of the residuum, are all cases where it is *apparent* that the testator *contemplated* the events which would defeat the estate devised specifically. They proceed upon the broad and rational principle which must control; of passing the estate according to the intention. Technical rules may sometimes presume intention, where there is nothing in the will to conflict with them, and show that the *presumed* could not have been the *actual* intention of the devisor. It is only in the case of a grant to a corporation, where a future interest can be expectant, on a grant in fee simple absolute. 2 *Black. Comm.* 256. I can, therefore, hardly suppose, where a devise is made to a corporation in fee simple absolute, that because there may by possibility be a contingent future estate, the devisor shall be deemed to have intended it to fall into the residuum, and thereby break the descent to the heir, in case the corporation should labor under a legal incapacity to take. The testator, in such case, would intend to devise to the corporation the whole estate. The dissolution of a perpetual corporation is of rare occurrence, and one which can hardly be supposed to be in the contemplation of ordinary minds. The contingency must therefore be regarded as

too remote to require an artificial rule to presume an intention to pass the reversionary and contingent interest. This rule, I think, should not be applied, except in cases where the immediate estate in fee passes to the corporation under the specific devise, which corporation is subsequently dissolved. In such case, the descent to the heir would be broken by the devise from him of the whole estate, and the reversionary and contingent interest, from the nature of the case, may, perhaps, be presumed to have been intended to pass, by a devise of the residuum. In the case under consideration, there are circumstances which rebut any presumption that the testator supposed there would be a residue of the estate devised to the church. It is a perpetual religious corporation, by grant from the crown, of which the testator was a member. He supposed it would be as perpetual as the religion and doctrine which they professed; to cherish and aid in the perpetuation of which, he bestowed his bounty upon it. He must, then, have supposed that the devise which he attempted, would pass the whole estate in the Shoemaker's field. Besides, he devises a life estate in the residuum to his wife, after the devise to the church, which was to take effect after his and her death. This is totally inconsistent with the idea that he intended the possible contingent and reversionary interest in the Shoemaker's field should pass by the residuary devise. It is repugnant to the general rule that a will must be so construed as to make all its parts harmonize, if possible.

It remains only to consider the second point above suggested— that the devisor did not intend to pass to the church his interest in the *undivided portion* of the Shoemaker's field.

The clause in the will devising to the church commences by devising, in fee, " all the testator's right, title, interest and property in and to an equal fifth part, share and proportion, of all that tract or parcel of land, situate, lying and being upon Manhattan's Island, within the city of New-York, called or known by the name of Shoemaker's field." Had it stopped here, no doubt could be entertained that he intended to pass his whole estate in the field, whether divided or undivided. The only enquiry is, did he intend by the language subsequently used, to

limit or restrain the extent of the above devise ?    Much of the subsequent part of the clause was intended by him to be a further and more particular description of the property devised ; and my opinion is that the draftsman, from want of particular attention to the deed of partition and chart thereto annexed, which shows the undivided as well as the divided parts of the field, omitted to mention the undivided portion.    This error was not detected when the will was read over before signing.    The devise is of all his interest or a fifth part or share in the field— not of all his interest in 35 lots set apart to him on a partition of the field among the proprietors thereof.    The devise, as contained in the first part of the clause, was *certain* and *definite* ; the further description being unnecessary, it is immaterial, and may be rejected whether true or false.

In the case of *Goodtitle* v. *Paul*, 2 *Burr.* 1089, there was a devise in these words : " I give and devise to my dear wife my farm at Bovington, in the tenure of John Smith."    A part of the farm consisted of woodland, which the testator kept in his own hands, and which was not in the tenure of John Smith.    It was held that the whole farm, including the woodland, passed by the devise.    It is manifestly intended, said Lord Mansfield, that the whole farm should pass by the will ; and the testator never thought of any restriction of his devise ; but meant these words, " in the tenure of John Smith, only as additional and further description of a thing sufficiently ascertained before."

In *Marshall* v. *Hopkins*, 15 *East*, 309, the testator devised " all that my messuage, dwelling house or tenement, with all the lands, hereditaments and appurtenances thereunto belonging, situate and being in Blythbury, in the parish of Mavesyn Pridware, in the county of Stafford, now in the occupation of Thomas Willet, except one meadow called Floodgate meadow."    The testator owned the messuage, and about nineteen acres of land in Blythbury.    The messuage and rather more than two acres of land were in the occupation of Thomas Willet ; the remainder of the property in Blythbury was occupied partly by the testator himself and partly by others.    The devise was held not to be confined to the land in the occupation of Thomas

Van Kleeck *v.* Dutch Church of New-York.

Willet, but extended to all the land in Blythbury except the meadow, which was specifically excepted from the devise. *Vide also*, 1 *Maule & Sel.* 299. In the case of *Doe* v. *The Earl of Jersey*, 1 *Barn. & Ald.* 550, the rule is established that where the property is sufficiently described in the devise, so as to leave no fair ground to doubt as to what is embraced, that then the addition of another circumstance, with a view to identify it, will not limit and restrain the devise, unless it clearly appears that the testator so intended it. *Vide also*, 3 *Co.* 10 *a*, *Dowtie's case; Doe* v. *Greathed*, 8 *East*, 103. In the case of *Gascoigne* v. *Barker*, 3 *Atk.* 8, the testator devised in these words : " All my lands, tenements and hereditaments, in possession, reversion, freehold and copyhold, in the parish of Chiswick or elsewhere in the county of Middlesex, which copyhold lands I have surrendered to the use of my will." The testator was seized of a copyhold house, which was an inn, called " The King of Bohemia's Head." Three parts of the house were in one manor and one in another. He had surrendered to the use of his will only in the manor under which the three parts were held. Lord Chancellor Hardwicke held that the words " which I have surrendered to the use of my will," restricted the devise to the copyhold surrendered, because the land was devised by general words ; but he says, " if instead of this, the testator had said, I give my messuages with the appurtenances called the King of Bohemia's Head, that would have been a different case, and I should have thought the subsequent words a mistake only in the description."

The rule, as collected from the cases which I have been able to examine, seems to be that where the devise is in general terms, the subsequent words of description will restrain the extent of the devise ; but where it is specific and certain as to the property, the subsequent description may be rejected. Now in the case under consideration, there is no ground to doubt as to the property embraced in the first devise. The Shoemaker's field was a definite description of a known piece of property. " All the testator's share or interest in it," embraced the undivided portion

Van Kleeck v. Dutch Church of New-York.

as well as the 35 lots which had been set off to him in severalty. Suppose in making the further additional description, the draftsman of this will had inadvertently omitted one or two of the divided lots; there cannot be a doubt but that the omitted lots would have passed under the broad and sweeping devise contained in the first part of the clause. The mistaken description would have been rejected, under the decisions above referred to, as unnecessary to identify the property. The repetition of the devise in the subsequent part of the clause, after the description of the divided lots, does not show that the testator intended thereby to except the undivided portion. The repeated devise, by the same mistake which occurred in the further description, is by general words, "all which lots, pieces or parcels of land," made to embrace only the divided lots. It is not inconsistent with the idea that he had given all his interest in the field, which had been devised in the former part of the clause, as fully as language could do it.

My opinion is, that the complainant has shown no valid claim to the property in question, under the will. The demurrer was therefore well taken, and the decree of the chancellor ought to be affirmed.

The delivery of the opinions being concluded, the following *resolutions* were proposed and passed upon by the court:

I. Resolved, that the land included in the devise to the church *did not pass* under the *residuary clause* in the will.

II. Resolved, that on the true construction of the will, *the whole* of the tract or parcel of land called Shoemaker's field— not only the part allotted and divided, but the piece undivided— was included in the clause devising to the church.

On the question being put, shall the *first resolution* be adopted? the members of the court divided as follows:

*In the affirmative :* The PRESIDENT of the Senate, *Chief Justice* NELSON, Mr. *Justice* BRONSON, and *Senators* J. BEARDSLEY, L. BEARDSLEY, BECKWITH, FOX, HULL, H. F. JONES, LACY, LEE,

H. A. Livingston, Moseley, Powers, Skinner, Spraker, Sterling, Verplanck, Wager—19.

*In the negative:* Mr. *Justice* Cowen, and *Senators* Downing, Huntington, Johnson, Lawyer, Van Dyck—6.

On the *second resolution,* the members divided as follows:

*For its adoption:* The President of the Senate, Mr. *Justice* Bronson, and *Senators* J. Beardsley, L. Beardsley, Hull, Lee, H. A. Livingston, Moseley, Powers, Spraker, Sterling, Verplanck, Wager—13.

*Against its adoption:* Chief Justice Nelson, Mr. *Justice* Cowen, and *Senators* Beckwith, Downing, Fox, Huntington, Johnson, H. F. Jones, Lacy, Lawyer, Loomis, Skinner, Van Dyck—13.

Whereupon the decree of the chancellor was affirmed.