New-York Special Term, November, 1848.   *Edmonds,*
Justice.

## Tucker *vs.* Tucker and others.

A testator, by his will executed in August, 1838, devised to his widow the use, rent and income of his dwelling house during life, or widowhood, and $1500 a year which he charged on certain parts of his real estate. He devised to John and William, sons of his son Moses, two houses and lots in C. street during their joint lives, and if either should die without issue then to the survivor for life. Upon the death of either or both leaving issue, then to such issue, and their heirs and assigns forever, so much of the said houses and lots as their father had a life estate in, while living. Upon the death of both, only one leaving issue, then both houses in fee to such issue. But in case of the death of both without issue, then a devise over to his children George, Mary, Sarah and Charles. To G. and J., sons of his son John, he devised two other houses and lots, with remainders limited over in the same manner. To his four children, George, Mary, Sarah and Charles, he devised four houses and lots in fee; but neither was to have possession until a year after the widow's death or marriage. The executors were authorized to rent and lease houses and lands, to make repairs, to pay taxes and assessments, to effect insurance, and to cause all surplus moneys over the uses specified in the will, to be paid to four of the testator's children. And the testator devised the residue of his estate to four of his children and to their heirs, and the survivor, if any of them should die without issue. By a codicil, the testator afterwards revoked the devises to C., one of his four children, and devised all that portion of his estate to his son George, in trust to receive his share of the personal estate and the rents of the real estate, and apply the same to C.'s use during life; and upon his death leaving children, in trust to convey said share in fee to such children; and in case of his death without children, then to convey in fee to C.'s heirs at law. On a bill by the children of the testator's son John, to set aside the will, on the ground that it created unlawful trusts, and suspended the power of alienation to an extent not warranted by law;

*Held* that the remainders over to George, in trust for C. for life, in the houses and lots devised to John and William, and to G. and J., were void. That the testator died intestate as to the rents and profits of the houses and lots devised to George in his own right and as trustee for C., to Mary, Sarah, John and William, and to J. and G. from the testator's death till the expiration of one year after the widow's death or marriage. And that all the residue of the will and codicil were legal and valid.

How far the failure of part of a will creating a trust estate, by reason of the illegality of a portion of the trusts, affects other parts confessedly legal.

IN EQUITY. On the 8th of August, 1838, Gideon Tucker made his will to pass real and personal estate, in which he devised to his widow the use, rent and income of his dwelling house during life or widowhood, and $1500 a year which he charged on his real estate in White and Chappel streets, in the city of New-York. He devised to John and William, sons of his son Moses, two houses and lots in Chappel-street during their joint lives, and if either died without issue, then to the survivor for life. Upon the death of either or both leaving issue, then to such issue and their heirs and assigns forever, so much of the said houses and lots as their father had a life estate in, while living. Upon the death of both, only one leaving issue, then both houses in fee to such issue. But in case of the death of both without issue, then a devise over to his children, George, Mary, Sarah and Charles, as afterwards mentioned. To Gideon and Joseph, sons of his son John, he devised two other houses and lots with remainders limited over in the same manner. To his four children, George, Mary, Sarah and Charles, he devised four houses and lots in fee ; but neither was to have possession until a year after his wife's death or marriage. His executors were authorized to rent and lease houses and lands, to make repairs, to pay taxes and assessments, effect insurance, and to cause all surplus moneys over the uses specified in the will to be paid to four of his children. And he devised the residue of his estate, " all his estate real and personal, not otherwise disposed of," to four of his children and to their heirs, and the survivor, if any of them should die without issue. One of the four children of the testator was his son Charles, and by a codicil dated 21st November, 1844, the testator, by reason of the incapacity of Charles, revoked the devises to him and devised all that portion of his estate to his son George, in trust to receive his share of his personal estate and the rents of the real estate, and apply the same to his use during life ; and upon his death leaving children, in trust to convey said share in fee to such children, and in case of his death without children, then to convey in fee to the heirs at law of Charles. The testator died 23d April, 1845, leaving his widow

Tucker *v.* Tucker.

and six children and the plaintiffs, children of his deceased son John, as his only heirs at law and next of kin. The bill of complaint was filed to set aside the will, on the ground that it created unlawful trusts, and suspended the power of alienation to an extent not warranted by law. Charles Tucker put in an answer setting up that the codicil was procured by undue influence and was void because it created unlawful trusts. The other defendants answered denying the undue influence, and claiming that the will and codicil were valid.

*C. O'Conor & F. B. Cutting*, for the plaintiffs.

*J. S. Woodward & M. S. Bidwell*, for the defendants.

*J. H. Lee*, for the guardian ad litem of the infant defendants.

EDMONDS, J.    There are two trusts created by this will. *First.* That to the executors, to exchange, sell and convey gores of land to straighten lines; to rent and lease houses and collect rents ; to repair; to pay taxes and assessments; to effect insurance, and to pay over the surplus to the devisees thereof. This is to continue until the death or marriage of the widow, and for one year thereafter.    This is a trust, in its very nature, and vests the estate in the trustees, because it is to receive rents and profits.    It is inalienable, because under our statute neither the trustees nor the *cestuis que trust* can convey.    And it is illegal, because the power of alienation being thus suspended for a certain and definite period, may be suspended for more than two lives in being; and because the other purposes of it are not those for which an express trust may be created under our statute. (1 *R. S.* 728, § 55.)    *Second.* The other trust is that for the benefit of Charles, whereby, in case of the death of John and William without children, or of Gideon and Joseph without children, his share of the estate devised to them, will be to his trustee for life, with remainder over to his children or heirs.    This trust is all legal except only that part which relates to his remainder over, after the death of John and Wil-

liam, and of Gideon and Joseph. As to that, it is illegal, because it will suspend the power of alienation in it for more than two lives in being.

One of these trusts being thus void in whole, and the other in part only, the question that is raised by this bill is, how far that affects the other devises in the will?

The first devise is to the wife of the testator, of household furniture, the use, rent and income of his homestead during life, and the payment of taxes and assessments upon it, by his executors, out of his estate, and $1500 a year during her life or widowhood, which is made a charge upon some of the land afterwards specifically devised. There is no part of this devise at all connected with or affected by, the before mentioned trusts, excepting only the payment of taxes and assessments. That may be because it is to be paid by his executors out of his estate; but the annuity is not directed to be paid by the executors, nor otherwise than as it is made a specific charge. The *second* devise is to John and William directly, and not through the intervention of a trust, and is no otherwise affected by the illegal trusts than as the rents and profits are, during the continuance of that to the executors, to be collected by them, and as there is a devise over on the death of John and William without issue. The *third* devise to Gideon and Joseph is in the same position. The *fourth* devise, to George, Mary, and Sarah, of the specific houses and lots, is in all respects unaffected by either of the trusts, except that their rents and profits during the executors' trust are to be collected by them and paid over. The *fifth* and *sixth* devises to the sons, Moses and Henry, are also unaffected by the trusts. The last devise is of the residuum, to four of his children in fee with remainders to the survivors, in case any of them should die without issue. The devise in the codicil, for Charles, I have already spoken of.

Thus it appears that no part of the will is affected by the trusts complained of, except the disposition which the testator made of the rents and profits during the life or widowhood of his wife and for one year thereafter, and the remainders over to Charles in the shares devised to John and William, and to

Tucker *v.* Tucker.

Gideon and Joseph, and perhaps the direction to pay the taxes and assessments on the homestead, of which I shall have occasion to speak more hereafter.

I have recently had occasion, in the case of *Dupre* v. *Thompson*,(a) to consider how far the failure of part of a will or conveyance creating a trust estate affects other parts confessedly legal. And I cannot do better than to refer to the observations made by me in that case. To those remarks I have but to add a reference to the provision of the statute, that in the construction of every instrument or conveyance, or authorizing the creation or conveyance of any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument and is consistent with the rules of law; (1 *R. S.* 748, §2;) and we have the rule which is to guide us in the decision of this case.

The only provision which is not certainly disposed of by these rules is that in respect to the payment of taxes and assessments on the homestead devised to the widow during life or widowhood. And in regard to that, I confess I have been somewhat in doubt.

The direction of the will is that they shall be paid by the executors, " out of the estate ;" and I have supposed that as the executors were to receive the rents and profits during the time that such charges were to be paid, it might have been the testator's intention that they should be paid out of such rents and profits. Hence my doubt; because if the trust as to the rents and profits were to fail, the charge upon them might fail also. But it is not clear that such was the intention. The words used, " my estate," are broad enough to comprehend every thing of which the testator died seised; yet there are parts of his estate with which the executors have nothing to do, viz: the widow's life estate and the two farms devised to his sons, Moses and Henry. Then again they are to be paid " by the executors," who, as such, have no estate but the personal property out of which to

(a) 4 *Barb. Sup. Court Rep.* 279.

Tucker *v.* Tucker.

pay it. And it is nowhere said that they shall be chargeable on the rents and profits.

On the contrary, it was clearly the intention of the testator that the widow should enjoy the homestead acquitted from such charges, and that the executors should see that it was so done. In the absence of any other provision, it would be clearly the duty of the executors to keep down those charges, out of the personal estate. And I do not find any provision in the whole will, showing a clearly defined intention that it should be otherwise. For aught that I can see, such may have been the intention of the testator, in any event. That is, at all events, too probable to warrant me in declaring that is not so.

The result then, is that the remainders over to George, in trust for Charles, for life in the houses and lots devised to John and William, and to Gideon and Joseph, are void; that the testator died *intestate* as to the rents and profits of the eight houses and lots devised to George in his own right and as trustee for Charles, to Mary, Sarah, John and William, and to Joseph and Gideon, from the testator's death till the expiration of one year after the widow's death or marriage, ( *Van Kleeck* v. *Dutch Church,* 20 *Wend.* 457 ; *Kip* v. *Van Cortland,* 7 *Hill,* 353 ;) and that all the residue of the will and codicil is legal and valid.

A decree must be entered accordingly, allowing the respective parties their costs out of the funds in the hands of the executors; the executors to be allowed, in addition, such counsel fee as the taxing officer shall certify to be reasonable.