McCoun, J.
(Dissenting.) — In order to determine the controversy before us upon this appeal, it is necessary to ascertain,, in the first place, what the respondent James B. Bayley would have been entitled to by the will, taken in connection with the first and the second codicils; and ^eB’ k°w ^ar ^ird codicil *has deprived him of those intended gifts, and transferred them to the Theological Seminary, as his substitute.
The will first makes provision for the widow, in lieu of dower, giving to her the fee of certain real property and the absolute ownership of some personal property, particularly mentioned, and also a life-estate in certain other real property, viz., a house in a town and a farm *207 in the country; and the use, during life, of certain other personal property, together with an annuity of $5000, to he paid to her from the income of a sufficient portion of the estate, to be set apart for the purpose, and managed as a trust-fund by the executors, during her life.
Next, it provides an annuity of $800 for a daughter, and another of $300’ for a widowed daughter-in-law of the testator, which are to be raised in like manner, by setting apart portions of the estate as trust-funds, to yield the amounts during the respective lives' of the annuitants; and then follows the fifth clause of the will which purports to dispose of all the rest and residue of the estate, real and personal, in three equal parts to be divided — one-third to the testator’s son, Isaac, in absolute ownership, one-third to trustees, for the use of another son, James Barclay, and the remaining third to be subdivided into five equal shares between James R. Bayley, Richard Bayley, Carlton Bayley, and William Bayley, and trustees for the use of Maria E. Bayley, all children of the testator’s deceased daughter, Grace Bay-ley — one share to each, in fee.
Although the words, “ all the rest and residue of the estate, real and personal, whatsoever and wheresoever,” as used in the fifth clause, are of sufficient import to carry everything not already disposed of, including the capital of the annuity-funds and the remainders in the lands and other property given to the wife for life, yet, it is very evident, from the subsequent parts of the will, that the testator has not used the words in that broad and comprehensive sense, nor, indeed, as embracing everything except those reversionary interests; for, by the tenth clause, we find him giving several *pecuniary legacies, amounting in all to $4000, which must he paid out of the general assets in the hands of the executors, because no other mode of paying them is provided for; and the application of the assets to that object would be in conflict with the pre *208 vious gift, if that is to be regarded as a gift of the general residue, in the place where it is found. That it was not intended to include any reversionary interests in the property previously given and directed to be set apart for the benefit of his wife, and daughter, and daughter-in-law ; in other words, that the fifth clause of the will is to be understood as disposing only of a particular residue, and not generally of “the residue” of . the estate, is apparent likewise from the sixth, seventh and ninth clauses of the will.
By the sixth clause, the executors are directed, as soon as conveniently may be, after the testator’s decease, and after having set apart so much of the estate as may be necessary for the annuities and the legacies afterwards mentioned, and the payment of debts and funeral expenses, to make a schedule and estimate of the rest and residue of all the estate, real and personal, and thereupon, they are to proceed and make a division and distribution of the same among the residuary legatees (so called) who are mentioned in item fifth of the will, according to its provisions, &c. The residue here spoken of is, doubtless, the same which is given under the like denomination by the fifth item, to be divided into three parts, and one of those parts' into five subdivisions; and it is composed of all that remains of the estate, over and above the annuity funds and the legacies, debts and funeral expenses, not including, however, any of the property in which the wife’s life-estate was given. The gift by the fifth clause, therefore, is to be understood as a gift of such portions of the estate only as were divisible by the executors, immediately after the death of the testator, and as not extending to any of those reversionary interests which appear to have been reserved for a subsequent and separate gift. Accordingly, we find in the seventh clause, that all those interests in remainder *are there disposed of, with but one exception. The exception is of the family plate, which is the *209 subject of a particular bequest, by the ninth clause of the will, after the wife’s use of it shall have ceased by her death. It is then to go to the sons, Isaac and James Barclay, and to the granddaughter, Maria E. Barclay, in equal shares, differing in the latter particular from the disposition made of other parts of the property by the seventh clause.
The seventh clause disposes of the fee of the real property in which the wife has a life-estate, and of the capital of the funds or property ordered to be set apart for the purpose of the annuities; but not all to the same persons. The remainder in fee of the farm, with the stock of cattle, farming utensils, and other property upon it, are given to a grandson (the son of Isaac), with a limitation over to his lawful issue, in the event of his death, before the death of the tenant for life, and if no issue, then to the persons taking the residuary estate, &c. The remainder of all the other property, on the dropping of the lives, is given “ to the same persons, in the same proportions and shares, and subject to the same trusts, as the residuary estate (so called) as mentioned and set forth in item fifth of the will.”
Although the same ultimate • disposition is here made of all this last-mentioned property, as is made of property by the fifth clause, yet, both clauses appear not to relate to the same property indiscriminately; but rather to separate and distinct parcels; indeed, they constitute separate gifts. The first is of parcels of property which can be handed over at once to the beneficiaries to whom they are given, upon a division and distribution to be made among them; the other, of portions of the estate set apart to answer special purposes and to await the happening of events which may be quite remote, before any such division and distribution can be made; and though, in a relative sense, both parcels may compose a residue of the estate, yet I do not see how it is possible to understand the fifth clause, when read in connection *210 Par^s °f *the will, as embracing all that had not been previously devised; or how, in the face of the distinction which the testator has made between the gifts by the fifth and the seventh, we can say, that both relate to the same subjects of bequest, and that the latter is but declarative and confirmatory of the former, in respect to the property given.
It follows, therefore, that under the denomination of “all the rest and residue of his estate,” &c., as given by the fifth clause of the will, the testator intended only such property as was numerically different from the property he had previously sjDecified in the gifts to his wife and his daughter and daughter-in-law, and such as should remain after the debts, funeral expenses and pecuniary legacies were all satisfied. According to this construction, James R Bayley would have been entitled, under that clause of the will, to a fifteenth part of the property, real and personal, which the executors were authorized and directed to. distribute as soon as might be, after the testator’s decease. All given to him beyond that he would take by virtue of the gift in the seventh clause.
The codicils are next to be considered. The first codicil adds $1000 to the wife’s annuity, rendering it necessary for the executors to increase the fund or capital to be set apart for the annuities, and, consequently, lessening the amount in their hands for immediate distribution.
The second codicil was intended to produce a more important change in the division of the estate. James Barclay, one of the sons, had died, and to prevent a lapse of the devise of one-third of the estate originally intended for his benefit, this codicil appears to have been made; but I think, with the court below, that it has failed to accomplish all it was probably designed to accomplish — that is, it fails to dispose of the share in all the propertv which, the deceased son would have taken *211 by tbe will, had he lived. Unfortunately, perhaps, for the intention of the testator, in framing this codicil, it only speaks of the fifth clause of the will, as the clause by which *lie had directed all his residuary estate to be divided into three equal shares and to be distributed; and in consequence of the death of his son, he directs that his said residuary estate, instead of being divided into three shares, shall be divided into two, and be distributed as follows: one-half to his son Isaac, and the other to the children of his deceased daughter, Grace Bayley, in the same manner, and subject to the same restrictions and trusts in respect to Maria E. Bayley and the share she will receive by the codicil, as is declared in the fifth clause in regard to her; and he devises and bequeaths the said residuary estate accordingly. Throughout this codicil, the residuary estate spoken of is the residuary estate embraced by the fifth clause of the will; and unless we reject all mention of the fifth clause in the codicil, we cannot apply the words residuary estate to any other than the property which was so denominated in the fifth clause itself; which, as we have already seen, is a particular and limited residue.
The consequence of thus restricting the operation of the codicil to the gifts by the. fifth clause, leaving the one-third of the residue and remainder devised by the seventh clause untouched by it, is a lapse of the latter devise, in the event which has happened, viz., the death of the son, James Barclay. As to which, therefore; there is an intestacy, and it passes to the heirs and next of kin, in the same manner as if no will had been made, except that the widow cannot participate, having accepted the provisions made for her by the will, which are declared to be in lieu of dower, and in full satisfaction of any distributive share and of all other claims upon the estate. But for that election, she would be entitled. (Van Kleeck v. Dutch Church, 20 Wend. 457.)
This is not the case of a revocation by the codicil, or *212 of snob a devise of the residue of an estate, as carries the property to the surviving residuary devisees, within the principle of Kip v. Van Cortlandt (7 Hill 347). The gift of the one-third of the family plate to James Barclay, by the ninth clause of the will, is, in the same situation, and that portion of the *property also on the death of the wife goes to the next of kin. We come now to the third and last codicil, by which the right of the appellants has been created, and which gives rise to the question, how far the respondent, James R Bayley, is cut off and the appellants are substituted as the devisees.
The third codicil, like the one preceding, refers to the fifth section of the 'will, as the section by which the testator had devised to the grandson a portion of the estate; no other part of the will is mentioned. It then states the cause of his making this codicil, and it annuls “the aforesaid bequest and devise to the said James N. Bayley,” and gives and bequeaths “ the portion so given him by the will to the Union Theological Seminary,” &c., and to their successors and assigns. The reasons assigned for making this codicil might readily enough induce a belief, that the testator intended to deprive this grandson of all participation in the benefits of his property. The proscriptive language used towards him, and the aversion, if not abhorrence, with which the testator appears to have looked upon the new faith he had embraced, and the new ecclesiastical association he had formed, and the dread of any of his property being used to build up a form of worship which he deemed worse than erroneous, would seem sufficient to induce a belief, that the testator must have intended a complete disinherison of this grandson; but it may -be, as his counsel had suggested, that the testator thought only to deprive him of that immediate benefit, which would result to the children and grandchildren, by the distribution of that portion of the property which he had *213 directed should be made as soon as conveniently might be after his decease; and not of that which would arise from a division to be made, at a more remote period, ' when the life-interests should cease, and when the remainders should vest in possession, and become distributable.
The intention is to be gathered, however, from the whole instrument — the codicil and from what is' there expressed, not from probabilities merely, or conjecture. It is *to be sought for in the words used, and when the words themselves convey a meaning which is plain and intelligible, there is no room for in-tendment, different from the meaning so expressed. Evidence of an extrinsic character, or from circumstances, is admissible, for the purpose of explaining the meaning of words, and of pointing their application, when they are of doubtful import; but such evidence is not admissible, for the purpose of showing what a testator actually intended, as an independent fact, aside from the words used, for this might lead to a contradiction of his words. (Wigram on Wills 7, 65; 2 Cowen & Hill’s Notes 1384, 1425; 5 B.& Ad. 129.)
The operative words of this codicil are confined to the fifth clause of the will; they refer to no other parts of it. The gift revoked by it, So far as James R. Bayley is concerned, is the gift created by that clause, and the property which he would have taken under, or by virtue of, that part of the will, enlarged as it is by the second codicil, is the same property which is given over to the Theological Seminary in his place. So expressly referrible is the language of the codicil to that particular bequest, and to nothing else, that we are not at liberty to extend its application to any other. There is no room for explanatory evidence of any sort, in regard to the words used, by which we can give to them a more general meaning. The circumstances which led to the making of the codicil, and. the motives by which the testator was *214 actuated, might produce a different conclusion, were the operative words of the codicil less precise and unequivocal, or in any respect open to construction, but those circumstances cannot be allowed to control the effect of words which admit of no ambiguity and require no interpretation. However reasonable the supposition, that the effect thus given to the codicil falls short of the testator’s real intention, and that he has labored under a mistake in regard to the comprehensiveness of the fifth clause of the will, or that there has been some accidental slip in the use of too few or too many words, in framing c0<^c^' we *canDLOt allow our conjectures to prevail, although they may appear to us well founded. If the testator has intended more than we can attribute to this last of his testamentary acts, it is a misfortune which can only be regretted, but cannot.be repaired. (Holder v. Howell, 8 Ves. 103.)[2]
A very recent case in the English common pleas has just fallen under my observation, which serves to show that the plain import of words used by a testator must be adhered to in expounding the will, although the court might be convinced that the testator did not fore *215 see the effect they might have to thwart his intention. It is the case of Doe ex dem. Blakiston v. Hazlewood (10 C. B. 544). There, a testator, by his will, devised an estate to his wife for life, remainder in fee to his nephew, with a proviso, that in case the testator’s wife should, at his decease, be enciente, the devise to the nephew was to cease, and the child was to take the remainder in fee. At the time of making the wdll, the testator had no child ; he was laboring under an illness, which he supposed would prove fatal to him; he, however, recovered from that sickness; a child was afterwards born to him in his lifetime. He then made a codicil, devising after-acquired property to such child; the wife was not enciente at the death of the testator. It was held, that the child born in the testator’s lifetime had no estate under the will, and as there was no posthumous child, the devise to the nephew took effect.
Cases were cited to the point, in behalf of the child, that the court should not adhere to the strict meaning of the words, but should give effect to the testator’s intention ; a different state of things having arisen from what was contemplated by him, at the time he made his will. White v. Barber (5 Burr. 2703) was strongly relied on, but held not to be law. *For the nephew, it was contended, that courts are not to conjee-ture what the testator intended, but are to construe the will according to the intention, as collected on the face and from the language of the instrument. Jekvis, C. J., observed, “ the rule is clear, that the intention must be apparent on the face of the will, and that there should be words used, capable of carrying that intention into effect. ■ The intention, at the time he made the will, was to provide for the posthumous child. The court could not depart from the then existing intention, and infer, that he intended, moreover, by that will, to provide for children to be born in his lifetime, if the event he then contemplated should not happen.” Maulé, J., in the *216 course of liis remarks says, “ suppose such. an. intention to be ever so clearly evinced — suppose a recital in a will of such intention, yet, if there be no apt words used to provide for it, the answer will be quod voluit non dixit. Even if a testator had recited, at the end of his will, that he had provided for all his children, still, unless there were some words which could be construed to provide for. them, the court could not give effect to his intention.”
Cuesswell, J., is to the same effect, when he says, “ and even if we were to imagine that the testator did intend to provide for all his children (not confining his will to a posthumous child), I cannot say, that the words used are sufiicient to accomplish it.” "Williams, J., concurred.
The views which I have thus far presented of the will in question, and the several codicils, are substantially the same as those taken in the elaborate opinion delivered in the court below, on which the decree appealed from is founded. There is one point in the case, however, about which I am led to differ from that learned court, and that is, in regard to the addition made by the second codicil to the shares given by the fifth clause of the will. By the second codicil, the shares of all the grandchildren, under the fifth clause, including James R Bayley, is increased from the fifth of a third to the fifth of a half, or in other words from a fifteenth to a tenth of *the whole of that part of the estate. _ The opinion of the court below holds (and the decree is so), that the Theological Seminary is only entitled to the original fifteenth part, and not to the addition made to it by the codicil, for that still belongs to James B. Bayley. This is correct, provided the revocation and the gift over by the third codicil are restricted in their operation, not only to the fifth clause, but also to the original share which the grandson would have taken under or by virtue of that clause. I agree to the first part of the proposition, and have shown my concur *217 rence in that view of the third codicil, so far as this, viz., that it is confined to the gift made by that clause to James R. Bayley, and cannot be extended to other gifts. But the question now is, what is the gift by the fifth clause, as it stood after the second codicil was made ? Does it not include, by the necessary effect of the codicil, the enlargement thereby made to the shares, or is the latter a new and distinct gift, by the codicil, while the gift by the fifth clause remains as it was originally made ?
The fifth clause is not revoked or superseded by the second codicil; if it were, the third codicil would be nugatory. It remains, therefore, as a substantive part of the will, and by it, the so-called “ rest and residue of the estate” is given. The gift is of an entirety, “to be divided,” however, into three equal parts, and one of these parts to be subdivided into five shares. Then comes the codicil, reciting that, by the fifth item, the testator had directed all his residuary estate to be divided in that manner, and distributed, &c., and that his son, James Barclay, to whom or for whose use one of the shares was given, having died, leaving no lawful issue, he, therefore, directs that instead of three shares, his said residuary estate shall be divided into two, and be distributed, so that his son Isaac shall have one, and the children of his deceased daughter Grace, the other — the latter to be divided among them in the same manner and subject to the same restrictions and trusts, &c., as declared in the fifth item. And this is followed *by an express devise and bequest of the said residuary estate accordingly.
Now, when we consider, that the making of a codicil, in the manner and form of this codicil, is a republication' of the will, bringing it down to the date of the republication, and making it, in effect, a new will, from that time, the codicil forming a part of it — for, in a general sense, a will consists of the aggregate contents *218 of all the papers through which it is dispersed (1 Jarman on Wills 172; Williams on Executors 108) — there can be no impropriety in saying, that this codicil, operating only upon the fifth clause, becomes incorporated into and identified with it, making it speak from that time, as the clause of the will by which that part of the estate is disposed of in equal moieties, and one moiety subdivided into minor parts; so .that there is, in effect, but one gift, as was originally contemplated by this part of the will, though in different parcels, owing to the death of one of the intended devisees. It appears to me, therefore, that we shall do no violence to any rule or principle of law, nor to the language of the codicil, but that we shall consult both, by holding that James R,. Bayley’s augmented share under the fifth clause and the second codicil, combined, is taken from him and given over to the Theological Seminary.
Upon this view of the case, the decree appealed from would be modified, so as to give the appellants the one-tenth instead of the one-fifteenth part of all that portion of the estate mentioned in the decree. In other respects, and subject to this modification, I think, the decree should be-affirmed.
Decree reversed, and a decree made in accordance with the opinion of Gardiner, J.

 It is a general rule in the construction of ivills, that the heir-at-law can only he disinherited by express devise, or necessary implication; in the construction of a will of doubtful meaning, every fair intendment is to be made in his favor. Bender v. Dietrick, 7 W. & S. 284; Hitchcock v. Hitchcock, 35 Penn. St. 393; Cowles v. Cowles, 53 Ibid. 175; Rupp v. Eberly, 79 Ibid. 141. The law favors a construction that will not tend to the disherison of the heir, unless such intention bo clearly expressed. Scott v. Guernsey, 48 N. Y. 106; s. c. 60 Barb. 163. An intention to disinherit an heir, even a lineal descendant, when expressed in plain unambiguous language, must be carried out; but it will not be imputed to a testator, by implication, nor when he uses language capable of a construction, which will not so operate. Low v. Harmony, 72 N. Y. 408, 414. Queers ? whether the rule is otherwise, when the heir is a Catholic priest or bishop 1 That the will of James Roosevelt was capable of two constructions, one in disherison of the heir, and the other not, is not deniable by any lawyer, who will carefully read the opinion of Judge Doer, in the court bv'ow, and the strong dissenting opinion delivered in the court of appeals.